354 So.2d 513 (1978)
STATE of Louisiana
v.
Jack W. THOMPSON.
No. 60251.
Supreme Court of Louisiana.
January 30, 1978.
*514 Wellborn Jack, Jr., Jack & Jack, Shreveport, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., R. Harmon Drew, Jr., Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged the defendant, Jack W. Thompson, with four counts of simple burglary and three counts of receiving stolen things, violations of LSA-R.S. 14:62 and 69. Pursuant to a plea bargain agreement, the defendant pled guilty to two counts of simple burglary and one count of receiving stolen things and reserved his right to appeal the denial of his motion to suppress, and the State nolle prosequied the remaining charges. See State v. Crosby, La., 338 So.2d 584 (1976). The court sentenced him to three four-year terms of imprisonment at hard labor, running concurrently.
The defendant appeals. He assigns one errorthe denial of the motion to suppress.
We adduce the following facts from the hearing on the motion to suppress:
William Bilbray told deputies that he burglarized the Patterson residence and "turned over" three weapons taken during the burglary to the defendant. On October 15, 1975, a city judge issued Deputy Stephens a search warrant for the defendant's home based on the following affidavit:
"Before me, the undersigned authority, personally came and appeared the person whose name is hereunto subscribed, who being by me duly sworn, deposes and says: That certain articles have been stolen from the residence of Mark Patterson, 1005 7th Southeast, Springhill, Webster Parish, Louisiana which articles are as follows: 1-22 cal. single shot rifle with homemade stock, 2-double barrell 12 gauge Belgium shotguns with hammers and that he has good reason to believe and does believe that said articles are now situated in residence of Jackie Thompson, located just off A vera Street in Sarepta, Webster Parish, Louisiana because: of a statement made by William Bilbray to Webster Parish Sheriff's Deputies that he (Bilbray) committed the burglary of the Patterson residence and turned the above described weapons over to the said Jackie Thompson, and that a search warrant is necessary to recover same."
[Underlined portions indicate information supplied to the printed form.]
On October 15, 1975, the officers searched the defendant's home. They seized the guns described in the affidavit and numerous other items. During the search, the defendant returned home and the officers arrested him. In response to Deputy Bloxom's on-the-scene questioning, the defendant admitted receiving some of the seized items from Bilbray.
On October 16 and 17, the following days, Deputy Bloxom obtained two additional warrants to search the defendant's home. The affidavits recite that the deputy observed certain items at the defendant's home during the October 15 search and that he later learned that they were stolen. These searches produced tools and bikes.
The defendant complains of the denial of the motion to suppress all tangible evidence seized in the three searches and his oral inculpatory statements. Specifically, he alleges that the October 15 search was illegal because its supporting affidavit failed to set forth facts sufficient to establish probable cause, and further, that the subsequent seizures and inculpatory statements must be suppressed as fruits of the poisonous tree.
We agree.
A search warrant will withstand an attack of "staleness" if the facts contained in the affidavit have not become so attenuated with the passage of time so as to *515 render those supporting facts non-existent. Stated another way, ". . . the proof [of probable cause] must be of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time." Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932). State v. Brawley, La., 347 So.2d 238 (1977); State v. Humble, La., 309 So.2d 138 (1975); State v. Boudreaux, La., 304 So.2d 343 (1974). See Annot., 100 A.L.R.2d 525 (1965); Mascolo, 43 Conn.B.J. 189, The Staleness of Probable Cause in Affidavits for Search Warrants: Resolving the Issue of Timeliness (1969).
The information establishing the "timeliness" of the facts relied on to support probable cause should be in the affidavit. See State v. Thomas, La., 329 So.2d 704 (1976); State v. Chaffin, La., 324 So.2d 369 (1975). Nevertheless, in State v. Boudreaux, supra, we stated:
"The absence of a date for each episode described in the affidavit is not fatal, however. The language of the affidavit, including the use of the present tense, indicates that the affiants are describing a course of conduct continuing to the date of the warrant. * * *
"Such an affidavit has been held to be adequate if, in a commonsense construction, it can be said from the face of the affidavit that the information received by the affiant was current and not stale. [Citations deleted.]" See also State v. Turner, La., 337 So.2d 1090 (1976).
The facts set forth in the October 15 affidavit are that Bilbray told deputies that he had burglarized the Patterson residence and "turned over" three weapons taken therefrom to the defendant. The affidavit lacks a time frame: it does not supply the issuing judge with the date of the burglary, the date of Bilbray's statement, or the date Bilbray gave the defendant the weapons. The sentences containing the supporting facts are in the past tense. Moreover, there are no detailed facts, such as Bilbray's personal observation of the weapons at the defendant's home or of a continuing course of conduct. These latter factors preclude application of the Boudreaux rationale. Thus, we hold that the affidavit failed to provide information sufficient for the issuing judge to determine that the proffered facts were current. The October 15 search was, therefore, invalid and all evidence seized pursuant thereto must be suppressed.
We must now determine whether the October 16 and 17 seizures and the inculpatory statements must also be suppressed. In State v. Jenkins, La., 340 So.2d 157 (1976), we formulated the following rule:
"In determining whether information obtained by officers in the conduct of an unlawful search was used to acquire other evidence against an accused, the test to be applied is not whether, but for the illegal search the evidence would not have been obtained, but rather `"whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint."' Wong Sun v. United States, 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1971), quoting Maguire, Evidence of Guilt 221 (1959)."
When the officers illegally searched the defendant's home on October 15, the defendant told Officer Bloxom that he received some of the items from William Bilbray. The supporting affidavits for the October 16 and 17 search warrants recite the following facts in support of probable cause: during the October 15 search, Officer Bloxom observed several tools and bikes at the defendant's home which he later learned were stolen.
Under the principle announced in Jenkins, supra, we hold that the evidence seized at the October 16 and 17 searches and the inculpatory statements made during the October 15 search must be suppressed. The officer's observations at the initial illegal search formed a major portion of the facts supporting probable cause. The single other fact, that the officer later learned that the objects were stolen, falls *516 extremely short of establishing probable cause for issuance of the warrants. See State v. Tapp, La., 353 So.2d 265 (1977). As the inculpatory statements were made during the illegal search, they were obtained "by exploitation of the illegality." There is no evidence in the record to indicate that the evidence could have been discovered from independent sources. See State v. Jenkins, supra. In any event, there are no intervening events sufficient to purge the evidence of the primary taint.
In conclusion, we hold that the trial court erred in denying the motion to suppress.
For the reasons assigned, the guilty pleas and sentences are set aside, and the case remanded to the trial court for a new trial or further proceedings.