752 So.2d 337 (2000)
STATE of Louisiana
v.
Timothy PLAIN.
No. 99 KA 1112.
Court of Appeal of Louisiana, First Circuit.
February 18, 2000.
*340 Wick Cooper, Assistant District Attorney, Baton Rouge, for Appellee, State of Louisiana.
George Downing, Peggy T. Goods, Baton Rouge, for Defendant/Appellant, Timothy Plain.
Before: CARTER, LeBLANC, and PETTIGREW, JJ.
CARTER, J.
The defendant, Timothy Plain, was charged by bill of information with one count of possession of a firearm by a convicted felon, a violation of LSA-R.S. 14:95.1. He pled not guilty. He moved to suppress physical evidence, inculpatory statements and/or confessions, but the motion was denied. Following a bench trial, he was found guilty as charged. He was sentenced to ten years at hard labor without benefit of probation, parole, or suspension of sentence and suspended a $1,000 fine.[1] He now appeals, designating four assignments of error.

SUFFICIENCY OF THE EVIDENCE
In assignment of error number four, the defendant contends the trial court erred in finding the evidence sufficient to convict him of the charge.
In reviewing claims challenging the sufficiency of the evidence, this court must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821B; State v. Mussall, 523 So.2d 1305, 1308-09 (La.1988).
Louisiana Revised Statute 14:95.1, in pertinent part, provides:
A. It is unlawful for any person who has been convicted of ... any violation of the Uniform Controlled Dangerous Substances Law which is a felony ... to possess a firearm or carry a concealed weapon.
* * * * * *
C. Except as otherwise specifically provided, this Section shall not apply to the following cases:
(1) The provisions of this Section prohibiting the possession of firearms and carrying concealed weapons by persons who have been convicted of certain felonies shall not apply to any person who has not been convicted of any felony for a period of ten years from the date of completion of sentence, probation, parole, or suspension of sentence.
(Footnote omitted).
Louisiana Revised Statute 14:95.1 does not make "actual" possession a necessary element of the offense or specifically require that the defendant have the firearm on his person to be in violation. "Constructive" possession satisfies the possessory element of the offense. Constructive possession occurs when the firearm is subject to the offender's dominion and control. Dominion and control over a weapon are sufficient to constitute constructive possession even if the control is only temporary in nature and even if the control is shared with another person. Mere presence in an area where a firearm is found, or mere association with an individual found to be in possession of a firearm, does not necessarily establish possession. See State v. Fisher, 94-2255, p. 4 (La.App. 1st Cir.12/15/95), 669 So.2d 460, 462, writ denied, 96-0958 (La.9/20/96), 679 So.2d 432.
The State relied upon documentary and testimonial evidence to establish the defendant's commission of the offense. The State introduced State Exhibit # 2, in globo, *341 into evidence. The exhibit consisted of certified true copies of the following: (1) bill of information 8-90-1484, filed in the Nineteenth Judicial District Court (JDC) on August 28, 1990, charging defendant with possession with intent to distribute cocaine on July 9, 1990; (2) October 12, 1990 minutes indicating that the defendant pled guilty to the charge; and (3) January 25, 1991 minutes indicating that the defendant was sentenced to five years at hard labor on the charge.
The State presented testimony from James Poss, an employee of the Department of Public Safety and Corrections, Probation and Parole Division. Poss identified the defendant in court as the person he had supervised under Nineteenth Judicial District Court docket number X-XX-XXXX during a five year probationary term. Poss possessed documentation reflecting that the defendant had been advised that he was prohibited from possessing a weapon.
The State presented testimony from Baton Rouge City Police Officer Randall Wiedeman. Officer Wiedeman applied for the search warrant contained in State Exhibit # 1, in globo. The warrant authorized a search of the residence of the defendant and his wife, Benita Plain.
When Officer Wiedeman arrived at the defendant's residence only Benita Plain was present at the home. Officer Wiedeman presented Ms. Plain with the search warrant and she paged the defendant.
The defendant arrived at the scene a few minutes later in a Chevrolet extra-cab pick-up truck, "like a show truck." Officer Wiedeman identified the defendant in court as the person who had arrived at the scene. Officer Wiedeman presented the search warrant to the defendant and advised him of his Miranda rights. He then asked the defendant if the defendant had any knowledge of any narcotics or weapons in the house, and the defendant stated he "had a .9 millimeter underneath the mattress in his bedroom." After Officer Wiedeman handcuffed the defendant, he led police officers to his bed and pointed out the location of the weapon. Police recovered a weapon from the area the defendant had pointed out, between the mattress and the box springs of the bed. When Officer Wiedeman brought the weapon back into the living room, Ms. Plain stated that she had never seen the gun before. Officer Wiedeman identified State Exhibit # 3 as the weapon recovereda.9 millimeter semi-automatic pistol, serial number "TKC 78705[,]" and State Exhibit # 4, in globo, as the weapon's loaded magazine. The defendant told Officer Wiedeman that he (the defendant) had purchased the weapon from a Mr. Williams or a Mr. Wilson. Subsequently, a search of the defendant's truck uncovered an additional magazine capable of fitting the weapon. The defendant stated that the magazine was broken and he intended to get it fixed.
Ms. Plain testified that the weapon belonged to her, was stored under her side of the bed, and was never handled by the defendant. She disputed Officer Wiedeman's account of the defendant leading police to the weapon. On cross-examination, Ms. Plain claimed that the defendant arrived at the scene in his own truck. She claimed no knowledge of a magazine being in the vehicle.
The defendant testified on his own behalf. He claimed the weapon belonged to his wife and that he had never seen the weapon until its discovery by police. He disputed Officer Wiedeman's testimony concerning his (the defendant's) stating the weapon belonged to him, his pointing out the weapon to police, and his identifying the person from whom he had purchased the weapon.
On cross-examination, the defendant conceded that he was the same person convicted of possession with intent to distribute cocaine under docket # X-XX-XXXX and that Poss was his probation officer. He claimed that he arrived at the scene in a truck belonging to his father. When *342 asked if he had had the magazine in the truck, the defendant answered, "not to my knowledge."
In finding the defendant guilty as charged, the fact finder obviously accepted the testimony of the State's witnesses and rejected the testimony of the defendant and his wife. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Patterson, 540 So.2d 515, 518 (La.App. 1st Cir.1989). The credibility of the testimony of a witness is a matter of the weight of the evidence. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). A determination of the weight to be given evidence is a question of fact for the trier of fact, not subject to appellate review. State v. Payne, 540 So.2d at 524; State v. Patterson, 540 So.2d at 518. On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Glynn, 94-0332, p. 32 (La.App. 1st Cir.4/7/95), 653 So.2d 1288, 1310, writ denied, 95-1153 (La.10/6/95), 661 So.2d 464.
After a thorough review of the record, we are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt that the defendant was guilty of the charged offense. Accordingly, this assignment of error is without merit.

MOTION TO SUPPRESS (STATEMENTS)
In assignment of error number one, the defendant contends the district court erred in denying his motion to suppress his statements. He argues that the State failed to prove that he knowingly and intelligently waived his rights in making the statements.
It is well-settled that for a confession or inculpatory statement to be admissible into evidence, the State must affirmatively show that it was freely and voluntarily given without influence of fear, duress, intimidation, menaces, threats, inducements, or promises. LSA-R.S. 15:451. Additionally, the State must show that an accused who makes a statement or confession during custodial interrogation was first advised of his Miranda rights. State v. Guidry, 93-1091, pp. 2-3 (La. App. 1st Cir.4/8/94), 635 So.2d 731, 733, writ denied, 94-0960 (La.7/1/94), 639 So.2d 1163.
The admissibility of a confession is, in the first instance, a question for the trial court; its conclusions on the credibility and weight of the testimony relating to the voluntary nature of the confession are accorded great weight and will not be overturned unless they are not supported by the evidence. Whether or not a showing of voluntariness has been made is analyzed on a case-by-case basis with regard to the facts and circumstances of each case. The trial court must consider the totality of the circumstances in deciding whether or not a confession is admissible. Guidry, 635 So.2d at 733-34.
The trial court held a hearing concerning the defendant's claim that any and all statements or confessions by him were obtained in violation of Miranda[2] and its progeny. Officer Wiedeman testified at the hearing. He identified the defendant in court as the person to whose home he went on April 1, 1998, to execute a search warrant. The police officers present at the defendant's residence showed the defendant the search warrant when he arrived at the residence. Officer Wiedeman then advised the defendant that he had a right to remain silent; that anything he said or did would be used against him in a court of law; that he had the right to an attorney; that if he could not afford an attorney, one would be appointed for him at no cost; that he had the right to have that attorney present during any and all questioning; and that if he made any *343 statements, he could stop at any time. Neither Officer Wiedeman, nor any other officer in his presence, made any threats or offered any inducements to the defendant in exchange for a statement. Officer Wiedeman Mirandized the defendant, in an abundance of caution, even though he was not under arrest. Officer Wiedeman then asked the defendant if the defendant had any narcotics or weapons in the house. The defendant answered that he "had a .9 millimeter handgun underneath his mattress in the bedroom," led police to the weapon, and pointed out the weapon. After the weapon was secured, the defendant was arrested.
Officer Wiedeman answered affirmatively when asked whether the defendant appeared to understand what was going on in connection with the search of his home. The defendant asked no questions and did not request the presence or advice of an attorney prior to making his statement concerning the weapon. After the magazine was located in the defendant's truck, the defendant stated he "was going to get that magazine fixed." Lastly, the State asked Officer Wiedeman, "Did Mr. Plain, on this date in April of 1998, indicate in any way any inability to understand his rights or in any way prohibited from understanding what was going on? Was he drunk or intoxicated, confused in any way?" Officer Wiedeman answered, "Not that I could tell."
On cross-examination, Officer Wiedeman conceded that he did not ask the defendant if he understood what was contained in the warrant. Nor did he ask the defendant whether or not he was on any kind of medication or drugs.
The court denied the motion to suppress the statements, noting that at least insofar as the first statement was concerned, Miranda warnings were not even necessary; even if the warnings were necessary, they were given; and the defendant's statements were freely and voluntarily made. The defense objected to the court's ruling and assigned error.
There was no abuse of discretion. Officer Wiedeman's testimony, which the court obviously found credible, established that the defendant's statements were made freely and voluntarily and without violation of Miranda. Accordingly, this assignment of error is without merit.

MOTION TO SUPPRESS (PHYSICAL EVIDENCE)
In assignment of error number two, the defendant contends the district court erred in denying his motion to suppress physical evidence. He argues that the search warrant obtained by police to search his home was not supported by probable cause. He claims that probable cause was lacking because the affidavit used to obtain the warrant contained unsubstantiated allegations of wrongdoing, citing State v. Humble, 309 So.2d 138 (La.1975). He further claims that the affidavit was rendered defective by misrepresentations, citing State v. Tassin, 343 So.2d 681 (La.1977) (on rehearing). Lastly, he claims that the evidence seized pursuant to the warrant exceeded the scope of the affidavit, citing State v. Sanchez, 284 So.2d 918 (La.1973).
After listening to argument from both the State and the defense, the trial court denied the portion of the defendant's motion to suppress concerning physical evidence. The court found that the judge authorizing the warrant had a substantial basis for concluding that probable cause sufficient to support a search of the residence for the items listed in the warrant existed, and that the judge made a practical, common sense decision based upon the facts stated.
Louisiana Code of Criminal Procedure article 162 provides:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.

*344 A search warrant shall particularly describe the person or place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search or seizure.
In Humble, the court held that the following statements in an affidavit used in support of a search warrant failed to provide a sufficient factual basis upon which the issuing magistrate could base a finding that the information provided was reliable:
A reliable informant has given me reliable information on one prior occasion two months or so ago concerning a pending criminal investigation and the information given to me proved to be true. My informant is [sic] never been in trouble, he pays his bills, he is peaceable in the community and is known in the community to tell the truth. He has recently informed me that Steve Humble, white male who drives and uses the above described car, uses and sells marijuana. The informer says he sells the marijuana out of his car to teenagers around Jonesville, La. Steve Humble has been suspected of using and distributing marijuana for a year or more. The undersigned has received reports from various sources, other than the reliable informant, referred to above, that Steve Humble has possessed and used marijuana. A Search (sic) warrant is requested to search the above described car.
Humble, 309 So.2d at 139.
The court explained:
The affidavit merely presents unsubstantiated rumors and conclusory statements which, absent concrete substantiation or corroboration, cannot be a sufficient basis for a finding of probable cause. The affidavit contains neither specific information nor specific details which would tend to establish how the reliable informant came into possession of his information. The affidavit contains no indication that the affiant attempted to verify the information received from the informant by conducting a surveillance or by any other means. While the affiant does state that other "sources" reported that the relator had possessed and used marijuana, those "sources" are not identified or otherwise rendered credible and reliable. Nor is the bare accusation of the unidentified "sources" sufficiently detailed to support a finding of probable cause.
Humble, 309 So.2d at 140.
In the instant case, the factual basis portion of the affidavit provided as follows:
Affiant advises the court that within the past twenty four hours affiant was contacted by a reliable confidential informant who advised that a Tim Plain was selling cocaine from 3154 Bootsie Dr. Affiant advises the court that within the past fourty (sic) eight hours said Cl had occasion to be inside said residence and therein observed Plain to be in possession of a large quantity of cocaine. Plain advised said Cl that he sells cocaine for 800 dollars per ounce. Said Cl also advised that a BF was present inside the house. Affiant advises that city services show that a Timmy Plain resides at said house. Plain's D.L. shows his address as 3154 Bootsie Drive. Affiant advises the court that said Cl has provided information which has led to the arrest of subjects for narcotic violations. Said Cl has assisted affiant on at least three cases. Said Cl has provided information which has proven this Cl to be reliable. Due to the easy concealment of said CDS affiant requests that this warrant to [sic] include all persons and/or vehicles present at the time of execution. Said Cl pointed out 3154 Bootsie to affiant. Affiant further advises the court that within the past fourty (sic) eight hours said Cl had occasion to observe Plain to (sic) participate in a narcotic transaction.
Humble is distinguishable. The affidavit in the instant case provided both "specific information" and "specific details" to *345 establish how the reliable informant came in possession of his information.
In Tassin (on rehearing), the court held that "[m]isrepresentation by an affiant cannot justify the invasion of an individual's home or his privacy, when there is in fact no true probable cause for the invasion." Tassin, 343 So.2d at 689. In the case, the affiant police officer conceded that he had never personally seen or observed Tassin using or distributing illegal drugs, but nevertheless stated in the affidavit, "Your affiant is well acquainted with Bill Tassin as a user and dealer in controlled dangerous substances." Tassin, 343 So.2d at 690.
In the instant case, the defendant argues that the affiant's use of "a large quantity" to describe the amount of cocaine the reliable informant witnessed the defendant in possession of constituted a misrepresentation. We disagree.
Officer Wiedeman's characterization of the amount of cocaine the reliable informant witnessed the defendant in possession of as "a large quantity" was a reasonable characterization, rather than a misrepresentation. Officer Wiedeman testified that the reliable informant told him that the defendant was in possession of "more than an ounce" of cocaine. Officer Wiedeman explained that he personally considered any quantity of cocaine over an ounce to be a large quantity. He estimated the street value of an ounce of cocaine to be between $1,000$1,200.
In Sanchez, in discussing arguments "(1) that the affidavit supporting the search warrant failed to establish probable cause for the search of Bastida's residence, and (2) that the premises to be searched [were] not adequately described in the affidavit[,]" the court referenced its discussion of those issues in State v. Bastida, 271 So.2d 854 (La.1973). Sanchez, 284 So.2d at 920. Thereafter, the court proceeded to provide "[a] few comments and clarification" of the dissenting opinion in Bastida as follows:
The search warrant was issued upon the affidavit of Det. Terrance Strada. The affidavit states that Det. Strada received a phone call from a confidential informant who had given him reliable information in the past. The informant advised Det. Strada that Leonard Bastida and another subject had just told him about an armed robbery they committed in which they cut the victim badly and thought that he might have died. The informant noted that both of the subjects were carrying automatic pistols, at the time of the conversation. The informant also stated to Det. Strada that Leonard Bastida was a narcotics addict and that he had heroin in his possession at the time of the conversation and was going to Bastida's residence to "shoot up".
These allegations were sufficient to establish probable cause for the issuance of a warrant to search for automatic pistols and narcotics. However, the warrant also lists as items to be seized, rifles, barbiturates, amphetamines, marijuana, and stolen credit cards. Nothing in the affidavit established probable cause to search for these items.
If any of these other items had been seized and offered into evidence they would, or at least should, have been suppressed by the trial court upon proper motion as being beyond the scope of the affidavit in support of the search warrant. However, the only items offered into evidence were a holster and ammunition for an automatic pistol which clearly were within the scope of the affidavit and as to which items the search warrant was clearly supported by probable cause.
The fact that the search warrant also described items not within the scope of the supporting affidavit does not render the warrant wholly invalid. The warrant was invalid only insofar as it authorized the seizure of evidence beyond the scope of the supporting affidavit. Since no evidence beyond the scope of the *346 supporting affidavit was introduced at defendant's trial, the existence of surplusage in the warrant caused the defendant no prejudice.
Sanchez, 284 So.2d at 920.
After carefully examining the portion of Sanchez relied upon by the defendant, we are convinced that it constitutes obiter dictum.[3] Our brethren in the fourth circuit, in the only other appellate decision to ever consider Sanchez, reached this same conclusion. See State v. Viera, 449 So.2d 644, 647 (La.App. 4th Cir.), writ denied, 450 So.2d 962 (La.1984). Further, not only is the defendant's reliance upon Sanchez as authority for the proposition that his weapon could not be seized as evidence of the instant offense because the affidavit concerned cocaine dealing rather than the instant offense without basis, the Louisiana Criminal Code clearly provides authority to the contrary.
Louisiana Code of Criminal Procedure article 165, in pertinent part, provides:
While in the course of executing a search warrant, a peace officer may ... seize things whether or not described in the warrant that may constitute evidence tending to prove the commission of any offense, and perform all other acts pursuant to his duties.
See also, Viera, 449 So.2d at 647.
Accordingly, this assignment of error is without merit.

LIMITATION OF EXAMINATION
In assignment of error number three, the defendant contends the trial court erred by denying the defense attempt, in regard to the issue of staleness of the search warrant, to question the police officer concerning whether or not he believed drugs would be found. He argues "staleness" of a search warrant can be considered in determining the warrant's validity and the admissibility of any evidence seized pursuant to the warrant, citing, State v. Thompson, 354 So.2d 513 (La.1978).
At the hearing on the portion of the defendant's motion to suppress concerning physical evidence, the defense called Officer Wiedeman to the stand. Thereafter, the State unsuccessfully objected to the defense question to Officer Wiedeman "Did your Cl give you specific information as to date and time that he observed a drug transaction at this residence?[,]" to which Officer Wiedeman answered, "Just within a 48-hour period." However, the trial court sustained a State objection to a defense question to Officer Wiedeman, "What reasonable belief did you have that drugs would still be found ... at the time you executed this warrant?"
In Thompson, the court found the following affidavit used in support of a search warrant to be defective on grounds of staleness, ruled the search performed under the warrant illegal, and ordered the evidence and inculpatory statements resulting therefrom suppressed:
Before me, the undersigned authority, personally came and appeared the person whose name is hereunto subscribed, who being by me duly sworn, deposes and says: That certain articles have been stolen from the residence of Mark Patterson, 1005 7th Southeast, Springhill, Webster Parish, Louisiana which articles are as follows: 1-22 cal. single shot rifle with homemade stock, 2-double barrell 12 gauge Belgium shotguns with hammers and that he has good reason to believe and does believe *347 that said articles are now situated in residence of Jackie Thompson, located just off Avera Street in Sarepta, Webster Parish, Louisiana because: of a statement made by William Bilbray to Webster Parish Sheriff's Deputies that he (Bilbray) committed the burglary of the Patterson residence and turned the above described weapons over to the said Jackie Thompson, and that a search warrant is necessary to recover same.
(Underlined portions indicate information supplied to the printed form.)
Thompson, 354 So.2d at 514.
The court explained:
The facts set forth in the October 15 affidavit are that Bilbray told deputies that he had burglarized the Patterson residence and "turned over" three weapons taken therefrom to the defendant. The affidavit lacks a time frame: it does not supply the issuing judge with the date of the burglary, the date of Bilbray's statement, or the date Bilbray gave the defendant the weapons. The sentences containing the supporting facts are in the past tense. Moreover, there are no detailed facts, such as Bilbray's personal observation of the weapons at the defendant's home or of a continuing course of conduct.
Thompson, 354 So.2d at 515.
Thompson is distinguishable. The affidavit in the instant case supplied the issuing judge both with a time frame ("within the past twenty four hours[,]" "within the past fourty (sic) eight hours"), and referenced personal observations of the Cl ("Cl had occasion to be inside said residence and therein observed Plain to be in possession of a large quantity of cocaine[,]" "Cl had occasion to observe Plain to participate in a narcotics transaction[]").
The trial court did not abuse its discretion in sustaining the State objection to the defense question. Whatever personal beliefs Officer Wiedeman had that drugs would be present at the defendant's residence upon execution of the search warrant were collateral or irrelevant to the issue before the trial court, i.e., whether or not the affidavit established probable cause for issuance of the warrant. A witness cannot be cross-examined as to a fact which is collateral or irrelevant to the issue at hand merely for the purpose of contradiction or impeachment. State v. Brumfield, 96-2667, p. 13 (La.10/20/98), 737 So.2d 660, 668 cert. denied, 526 U.S. 1025, 119 S.Ct. 1267, 143 L.Ed.2d 362 (1999).
Moreover, because the affidavit in the instant case was not defective for "staleness," limitation of questioning on that issue, if error, was harmless error. See LSA-C.Cr.P. art. 921. Accordingly, this assignment of error is without merit.

CONCLUSION
For these reasons, defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] The minutes reflect that the trial court failed to impose the mandatory minimum fine for the offense. However, the transcript reflects that the fine was indeed imposed. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732, 734 (La. 1983).
[2] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[3] "It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated." Cohens v. Virginia, 19 U.S. (6 Wheat) 264, 399-400, 5 L.Ed. 257 (1821).