**NOT DESIGNATED FOR PUBLICATION**

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0634

STATE OF LOUISIANA

VERSUS

JASON ANTHONY ORGERON

Judgment Rendered: **DEC 2 2 2021**

* * * * *

On Appeal from the
Seventeenth Judicial District Court
In and for the Parish of Lafourche
State of Louisiana
Trial Court No. 571157

The Honorable Steven M. Miller, Judge Presiding

* * * * *

Kristine Russell                          Attorneys for Appellee
District Attorney                         State of Louisiana
Shaun-Philip George
Joseph S. Soignet
Ben Caillouet
Assistant District Attorneys
Thibodaux, Louisiana

Jane L. Beebe                             Attorney for Defendant/Appellant
Addis, Louisiana                          Jason Anthony Orgeron

* * * * *

BEFORE:   WHIPPLE, CJ., PENZATO, AND HESTER, JJ.

**PENZATO, J.**

The defendant, Jason Anthony Orgeron, was charged by bill of information with illegal possession of stolen firearms (count one), a violation of La. R.S. 14:69.1, and possession of a firearm or carrying a concealed weapon by a convicted felon (count two), a violation of La. R.S. 14:95.1.[1] He entered a plea of not guilty on each count. After a trial by jury, the defendant was found guilty as charged.[2] The defendant filed a motion for post-verdict judgment of acquittal, which the trial court granted as to count one, but denied as to count two. The defendant also filed a motion for new trial, which the trial court denied.[3] The defendant now appeals, assigning error to the sufficiency of the evidence on count two. For the following reasons, we affirm the conviction.

## STATEMENT OF FACTS

On October 30, 2017, agents of the Lafourche Parish Drug Task Force and the Lafourche Parish Interagency Crisis Management Unit (SWAT) arrived at the defendant's residence, located at 202 West 42nd Street, to execute a search warrant for weapons. Specifically, based on information obtained while investigating complaints of unauthorized use of a movable and a burglary, the agents obtained a warrant to search the defendant's residence for an AR-15 and a Ruger pistol. Prior

---

[1] The defendant was also charged with illegal possession of stolen things (count three), a violation of La. R.S. 14:69. However, the State later entered a *nolle prosequi* on count three.

[2] The jury's guilty verdict on count one was non-unanimous, based on a concurrence of eleven jurors. The guilty verdict on count two was unanimous. As noted above, the trial court granted the defendant's motion for post-verdict judgment of acquittal as to count one because it found the evidence was insufficient to support the conviction. The trial court denied the defendant's motion for new trial. Only the conviction on count two is being appealed in this case.

[3] The trial court originally sentenced the defendant to seventeen years imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. Subsequently, the State filed a habitual offender bill of information under a separate docket number, to which the defendant pled not guilty. Handwritten rulings by the trial court on certain post-sentencing motions filed by and on behalf of the defendant reveal that the court vacated the defendant's sentence and resentenced him as a habitual offender. The defendant's habitual offender adjudication and resentencing are not included in the instant record and are not part of this appeal.

2

to the execution of the search warrant, Agent Zachary Sciortino and Agent Martin Gutierrez conducted surveillance of the defendant's residence. Utilizing an unmarked vehicle, the agents parked up the street from the defendant's house, while snipers were on the ground to assist with the surveillance, such that the house was surrounded and considered "locked down."

After hours of surveillance, the agents observed a vehicle pull up to the residence and notified SWAT to proceed with the execution of the warrant. As Sergeant Derek Champagne testified, they unsuccessfully attempted to make contact with the defendant via the loudspeaker of a fully marked squad car and SWAT negotiators attempted to contact the defendant via cell phone. A female subject, identified as Ashley Serigny, exited the residence and entered Sergeant Adam Dufrene's police unit, where she voluntarily provided additional information. After obtaining additional information from Serigny, the officers again attempted to make contact with the defendant, but were unsuccessful. The officers then deployed CS gas and entered the home. The gas caused the defendant to come down from the attic, and the officers arrested him.

The agents then executed the search warrant. While searching the kitchen, they recovered a Ruger nine-millimeter pistol and ammunition, wrapped in a towel in a closed bread box.[4] Further, the agents looked in a red truck[5] parked in the driveway outside of the residence, saw two guns in plain view on the back seat, and obtained a search warrant for the vehicle. The vehicle was towed to a secured facility where the search warrant was then executed. During the search of the

---

[4] Based on its serial numbers, the agents verified that it was the pistol that had previously been reported stolen, as provided in the search warrant.

[5] The red truck was registered to Juan Barrios, but had been transferred to Byron Oglesby.

vehicle, two shotguns and three rifles that were also reported stolen were recovered from the backseat.[6]

## ASSIGNMENT OF ERROR

In his sole assignment of error, the defendant argues that the evidence is insufficient to support the guilty verdict on count two, possession of a firearm or carrying a concealed weapon by a convicted felon. The defendant does not contest the predicate conviction, but argues that the State failed to prove beyond a reasonable doubt that he, at any time, was in actual or constructive possession of the firearm found in the bread box. The defendant challenges the credibility of Serigny, his girlfriend at the time of the offense, noting that she has felony convictions for theft, cruelty to a juvenile, and two drug possessions, and was serving two years imprisonment on a probation revocation at the time of the trial. He further argues that Serigny's testimony was self-serving. The defendant notes that his mother testified that she had never known of him having or handling guns. Further, the defendant testified at trial that he had borrowed the red truck. He also points out that there were no fingerprint or DNA tests performed. Finally, the defendant contends that the gun in the bread box was proved to be equally "as constructively possessed" by Serigny, as by himself, adding that this factor "alone is reasonable doubt."[7]

---

[6] The stolen firearms were later returned to their owner, Ralph Saia, who testified that they were stolen from his home. On appeal, the defendant only challenges the evidence of possession of the firearm found in the bread box.

[7] The defendant also argues the trial court, by denying his motions for post-verdict judgment of acquittal and for a new trial, failed to hold the State to its burden of proof. However, the denial of a motion for new trial based on La. Code Crim. P. art. 851(B)(1) is not subject to review on appeal. *See* La. Code Crim. P. art. 858; *State v. Hampton*, 98-0331 (La. 4/23/99), 750 So.2d 867, 879-80, *cert. denied*, 528 U.S. 1007, 120 S.Ct. 504, 145 L.Ed.2d 390 (1999); *State v. Francis*, 2019-1392 (La. App. 1st Cir. 12/17/20), 318 So.3d 862, 867 n.6. Thus, the only issue reviewable on appeal is the constitutional issue of sufficiency of the evidence, raised in the defendant's motion for post-verdict judgment of acquittal. *See* La. Code Crim. P. art. 821.

4

Considering the testimony of Sergeant Champagne and Serigny, the State contends that it presented sufficient evidence to prove beyond a reasonable doubt that the defendant had knowing, constructive possession of the firearms collected in this case. As the State further notes, notwithstanding Serigny's criminal history, the jury accepted the testimony of Serigny and rejected the testimony of the defendant, who also had a criminal history.

A conviction based on insufficient evidence cannot stand as it violates Due Process. *See* U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). *See* La. Code Crim. P. art. 821(B); *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660. The *Jackson* standard of review, incorporated in Article 821(B), is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. *State v. St. Cyre*, 2019-0034 (La. App. 1st Cir. 12/19/19), 292 So.3d 88, 113, *writ denied*, 2020-00142 (La. 5/26/20), 296 So.3d 1063.

When analyzing circumstantial evidence, La. R.S. 15:438 provides that the fact finder must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. *See State v. Patorno*, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144. When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. James*, 2017-1253 (La. App. 1st Cir. 2/27/18), 243 So.3d 717, 721, *writ denied*, 2018-0419 (La. 1/8/19), 259 So.3d 1024.

5

Louisiana Revised Statutes 14:95.1(A) makes it unlawful for any person who has been convicted of certain felonies to possess a firearm. To prove a violation of La. R.S. 14:95.1, the State must prove: (1) the defendant's status as a convicted felon; and (2) that the defendant was in possession of a firearm. *State v. Loper*, 2010-0582 (La. App. 1st Cir. 10/29/10), 48 So.3d 1263, 1266. The State must also prove that ten years have not elapsed since the date of completion of the punishment for the prior felony conviction. *See* La. R.S. 14:95.1(C). At trial, the parties stipulated to the defendant's predicate conviction of aggravated flight from an officer, a felony under La. R.S. 14:108.1, and the defendant does not contest his conviction predicate on appeal.

Louisiana Revised Statute 14:95.1 does not make "actual" possession a necessary element of the offense nor specifically require that the defendant have the firearm on his person to be in violation. "Constructive" possession satisfies the possessory element of the offense. *State v. Day*, 410 So.2d 741, 743 (La. 1982); *St. Cyre*, 292 So.3d at 113. Constructive possession occurs when the firearm is subject to the defendant's dominion and control. *State v. Plain*, 99-1112 (La. App. 1st Cir. 2/18/00), 752 So.2d 337, 340. Dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared with another person. *See Plain*, 752 So.2d at 340.

Constructive possession contains an element of awareness or knowledge that the firearm is present, and the general intent to possess it. *St. Cyre*, 292 So.3d at 113. General criminal intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). Although the existence of intent is a question of fact, it may be inferred from the circumstances of the transaction. Mere presence in an area where a firearm is found, or mere association with an individual found to be

in possession of a firearm, does not necessarily establish possession. *State v. Carter*, 2018-0078 (La. App. 1st Cir. 12/17/18), 2018 WL 6616902, at *5 (unpublished), *writs denied*, 2019-0246, 2019-0105 (La. 4/22/19), 268 So.3d 299, 303, *cert. denied*, ___U.S. ___, 140 S.Ct. 446, 205 L.Ed. 259 (2019). Whether the proof is sufficient to establish possession turns on the facts of each case. *State v. Leblanc*, 2016-1114 (La. App. 1st Cir. 2/17/17), 2017 WL 658257, at *2 (unpublished). Further, guilty knowledge may be inferred from the circumstances of the transaction and proved by direct or circumstantial evidence. *State v. Johnson*, 2003-1228 (La. 4/14/04), 870 So.2d 995, 998.

According to police testimony presented at trial, the defendant and Serigny were the only two individuals located in the residence on the night in question. As Serigny testified, at the time of the trial, she was an inmate at the Terrebonne Parish Correctional Justice Complex.[8] Serigny was in a relationship with the defendant in 2017, and she lived at the residence in question with the defendant. She further stated that on the night in question, the police called the defendant's cell phone while he was asleep on the sofa. The officers told Serigny to wake the defendant up, that they had the residence surrounded, and that they were there to arrest the defendant.

According to Serigny, earlier that afternoon, she and the defendant went "joyriding" with a couple of friends and were dropped off at the residence of the defendant's friend, Byron Oglesby. She disclosed that they had borrowed Oglesby's truck and that "long" firearms wrapped in blankets/towels were on the backseat at the time. Serigny stated that when they got home, the defendant put the firearm that he had on him that night in the bread box in the kitchen, next to the

---

[8] Serigny testified that she also uses her maiden name Lovell. She explained that her criminal record consists of the following convictions: theft in 2012, cruelty to a juvenile in 2013 (based on her description of the offense), and two drug possession offenses in 2017.

phone that she answered when the police called. Serigny clarified that it took her about an hour to exit the house. She then talked to Sergeant Dufrene for four hours, during which time she told him about the firearm in the house and the additional guns in the truck.

Serigny confirmed that she saw the defendant holding the firearm recovered from the bread box. She indicated that she told the police about the firearm out of concern for the defendant's safety. Serigny further established that she and the defendant were the only people in the red truck that night and at home at the time of the search.

The defendant's mother, Mary Orgeron, testified that at the time of the defendant's arrest, he and Serigny lived on the defendant's property, located behind her house. When asked if anyone else lived with the defendant at the time, Ms. Orgeron stated, "[t]here was always some people in and out and I have no idea, you know, if there was anybody else there at that time." When asked if the defendant, to her knowledge, ever used or carried weapons around his house or her house, Ms. Orgeron responded, "No."

The defendant also testified at trial. He confirmed being in the house on the date in question, but denied knowing that the Ruger pistol and ammunition were in the home. In explaining his failure to respond to the police as they attempted to arrest him, the defendant testified that he was asleep on the sofa at the time. He further explained that he was a drug user and had been up for a couple of days before falling asleep on the sofa. He stated that he woke up when he heard Serigny on the telephone crying. He questioned Serigny, and she mouthed the words, "It's the cops." The defendant told Serigny to give him the phone, and he then terminated the phone call. The defendant additionally stated that he observed

8

a light shining through the front doorway of the residence, heard dogs barking, and "[heard the police] on the PA calling [his] name."

The defendant noted that although he was disoriented and thirsty, as he had just woken up, he was aware of the fact that he had outstanding warrants and believed the police were there for the execution of the warrants. The defendant told Serigny to go outside. He testified that he then went up to the attic, as he had previously been attacked by a canine dog during the aggravated flight from an officer[9] incident and feared the dogs that he heard barking outside. The defendant said he fell back asleep in the attic. He further stated, "that's why I never responded to any calls from the police or anything until they actually started throwing the gas up in that attic and started yelling and it woke me back up."

When asked about other visitors that would come to his residence, the defendant stated, "They always had people in and out." He indicated that he was not always aware of what other people were doing while in his house. He stated that most of the visitors were also drug users who tended to "try to just get over on people" and noted there was always "misconceptions and trickery being done." The defendant admitted to being in the red truck that night, but testified that Oglesby drove him and Serigny home and that Oglesby was still there when he (the defendant) fell asleep. The defendant noted that he fell asleep during daylight hours and that he was on crystal meth and heroin at the time.[10] He stated that he did not know where Oglesby was when the police arrived.

---

[9] The defendant testified that in addition to the aggravated flight from an officer conviction, his criminal record consists of convictions for possession with intent to distribute marijuana, possession of alprazolam, possession of cocaine, second degree battery, and two counts of simple burglary. He noted that the simple burglary incidents occurred "like, 20 years ago." He further stated that on the night in question, he had outstanding warrants for theft of a motor vehicle and forgery, but noted that the charges were "all dropped due to no involvement."

[10] The defendant further testified that Serigny was going to move out of the house, as they both had outstanding warrants and did not think they should continue living in the same residence. According to the defendant, Oglesby stayed at the residence to wait for Serigny to gather her belongings and agreed to take her "somewhere else."

The defendant further denied knowing that the guns were in the truck and stated that he had no knowledge of guns being stolen.[11] Further, according to the defendant, he was aware of the bread box in the kitchen, but he does not eat bread and would not have opened or checked the bread box. When pressed as to how a gun could have been in his bread box without his knowledge, the defendant testified, "Ashley has more involvement than what she's leading on to be." When specifically asked if he was saying that Serigny committed the offense, the defendant stated, "Could be." He added, "I don't possess the knowledge of what actually happened so I can't tell you exactly what went on to have that gun."

The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Unless there is internal contradiction or irreconcilable conflict with the physical evidence, the testimony of one witness, if believed by the fact finder, is sufficient to support a factual conclusion. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. *St. Cyre*, 292 So.3d at 114.

The verdict rendered in this case indicates that the jury inferred constructive possession of the firearms recovered in this case. The defendant's testimony was in direct conflict with Serigny's testimony. Serigny, consistent with the testimony of Agent Sciortino and Sergeant Champagne, testified that the guns in the truck were in plain view on the backseat and that she and the defendant were the only two people in the truck and at the residence that night. She further specified that she saw the defendant holding the firearm recovered from the bread box and that it was the defendant who placed the firearm in the bread box. In reviewing the

---

[11] The defendant testified that he knew the individuals who burglarized Saia's home, but did not know about the burglary before having access to the discovery packet.

evidence, we cannot say that the jury was irrational in determining, under the facts and circumstances presented to them, that the defendant was aware of the presence of the firearm in question and that it was in his dominion and control. *See Ordodi*, 946 So.2d at 662. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (*per curiam*). A court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law in accepting a hypothesis of innocence that was not unreasonably rejected by the fact finder. *See State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (*per curiam*).

Based on our careful review of the record, we are convinced that any rational trier of fact, viewing the evidence presented at trial in the light most favorable to the State, could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the offense of possession of a firearm or carrying a concealed weapon by a convicted felon. Accordingly, we find no error in the trial court's denial of the defendant's motion for post-verdict judgment of acquittal. The defendant's sole assignment of error lacks merit.

**CONVICTION AFFIRMED.**