STATE OF LOUISIANA
v.
RYAN O'NEAL WOODARD
No. 2007 KA 0402
Court of Appeals of Louisiana, First Circuit.
February 20, 2008.
Not Designated for Publication
JOSEPH L. WAITZ, Jr. District Attorney, ELLEN DAIGLE DOSKEY, Assistant District Attorney, Houma, Louisiana. Counsel for Appellee State of Louisiana.
DOUGLAS H. GREENBURG, Constance JOHNSON McCARDLE, Houma, LA, Counsel for Defendant/Appellant, Ryan O'Neal Woodard
Before: WHIPPLE, GUIDRY, and HUGHES, JJ.
GUIDRY, J.
The defendant, Ryan O'Neal Woodard, was charged by bill of information with possession of a firearm by a convicted felon, a violation of La. R.S. 14:95.1. The defendant entered a plea of not guilty and, after a trial by jury, was found guilty as charged. The trial court denied the defendant's motion for new trial. The defendant was sentenced to ten years imprisonment at hard labor without the benefit of probation, parole, or suspension of sentence. The trial court further imposed a $1,000.00 fine and court costs (with the imposition of an additional one-year imprisonment at hard labor upon default on payment of the fine and costs). The defendant now appeals, raising the following assignments of error:
1. The evidence adduced at trial was insufficient to sustain a verdict of guilty of the offense charged as a matter of law.
2. The defendant was denied the effective assistance of counsel as guaranteed by the Fifth Amendment of the United States Constitution and Article 1, § 13 of the Louisiana Constitution.
3. The trial court erred in allowing the defendant's former counsel to testify to alleged admissions of guilt, in accepting the testimony of trial counsel as substantive evidence of the guilt of the accused, and in denying defendant's motion for new trial based solely on that testimony.
4. The trial court's denial of the motion for new trial was an abuse of discretion.
For the following reasons, we reverse the conviction, vacate the sentence, and remand for a new trial.

STATEMENT OF FACTS
On or about March 31, 2005, Dina Stewart, the general manager of Chateau Creole Apartments, contacted the Terrebonne Parish Sheriffs Department to report suspected drug activity in the apartment complex parking lot. Specifically, the apartment maintenance supervisor, Wade Duet, smelled marijuana burning from or near an unfamiliar vehicle. Duet remained near the vehicle and called Stewart. Agent Wes Hanlon, a narcotics agent for the Terrebonne Parish Narcotics Task Force, told Stewart to instruct Duet to keep the vehicle in eye's view as officers proceeded to the location. Duet observed a black male exit the vehicle and enter apartment A24. The apartment was registered under the names Shandra Lewis and Melanie Williams. Agent Hanlon, other Task Force members, and a K-9 officer arrived at the apartment complex near 4:00 p.m.
The K-9 alerted to the presence of a narcotic substance near the door seams of the driver's side of the vehicle. The vehicle was registered to Ryan Woodard, the defendant. Several officers approached apartment A24 while others remained near the vehicle. The defendant answered the door and, ultimately, allowed the officers to enter. After obtaining search warrants for the vehicle and the apartment, the officers recovered a .40-caliber handgun from an apartment bedroom.

ASSIGNMENT OF ERROR NUMBER ONE
In the first assignment of error, the defendant notes that there is no evidence of actual possession and further argues that the circumstantial evidence of constructive possession is insufficient. Noting that the weapon was not in plain sight, the defendant contends that there is no evidence that he was aware of the presence of the weapon and no evidence that he intended to possess it. The defendant concludes that there is no evidentiary basis for the exclusion of the possibilities that the weapon belonged to someone else and the defendant did not exercise dominion and control over it.
We note initially that issues are raised in this appeal contesting the sufficiency of the evidence and alleging one or more trial errors. In such a case, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proven beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence that was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by us of the trial en-or issues as to that crime would be pure dicta since those issues are moot.
On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the other assignments of error to determine whether the accused is entitled to a new trial. If the reviewing court determines that there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused will be granted a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, might be insufficient. State v. Hearold, 603 So.2d 731, 734 (La. 1992).
The constitutional standard for testing the sufficiency of the evidence, as adopted by the Legislature in enacting La. C.Cr. P. art. 821, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). The Jackson standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. State v. Graham, XXXX-XXXX, p. 5 (La. App. 1st Cir. 2/14/03), 845 So.2d 416, 420.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Richardson, 459 So.2d 31, 38 (La. App. 1st Cir. 1984). On appeal, this court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. State v. Creel, 540 So.2d 511, 514 (La. App. 1st Cir.), writ denied, 546 So.2d 169 (La. 1989). When a case involves circumstantial evidence and the trier of fact reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So.2d 126 (La. 1987).
To prove a violation of La. R.S. 14:95.1, the State must show that the defendant was in possession of a firearm and is a convicted felon. The statute does not make "actual" possession a necessary element of the offense or specifically require that the defendant have the firearm on his person to be in violation. "Constructive" possession satisfies the possessory element of the offense. State v. Day, 410 So.2d 741, 743 (La. 1982). Whether the proof is sufficient to establish possession turns on the facts of each case. See State v. Harris, 94-0970, p. 4 (La. 12/8/94), 647 So.2d 337, 338-39 (per curiam); State v. Bell, 566 So.2d 959, 959-60 (La. 1990) (per curiam).
Constructive possession of a firearm occurs when the firearm is subject to the defendant's dominion and control. See State v. Plain, 99-1112, p. 3 (La. App. 1st Cir. 2/18/00), 752 So.2d 337, 340 (constructive possession found where the defendant admitted to having the weapon underneath the mattress in his bedroom, the defendant then led officers to his bed and pointed out the location of the weapon, and the police recovered a weapon from the area defendant had pointed out); State v. Mose, 412 So.2d 584, 585-86 (La. 1982) (gun located in the defendant's bedroom sufficient for constructive possession); State v. Frank, 549 So.2d 401, 405 (La. App. 3d Cir. 1989) (constructive possession found where gun was in plain view on front seat of a car the defendant was driving but did not own); State v. Lewis, 535 So.2d 943, 950 (La. App. 2d Cir. 1988), writ denied, 538 So.2d 608 (La. 1989) (presence of firearm in the defendant's home, statement by the defendant that gun belonged to his wife, and discovery of shoulder holster in the master bedroom indicated the defendant's awareness, dominion and control over the firearm). Louisiana cases hold that a defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary and even if the control is shared. Plain, 99-1112 at p. 3, 752 So.2d at 340; State v. Bailey, 511 So.2d 1248, 1250 (La. App. 2d Cir. 1987), writ denied, 519 So.2d 132 (La. 1988); State v. Melbert, 546 So.2d 948, 950 (La. App. 3d Cir. 1989). However, mere presence of a defendant in the area of the contraband or other evidence seized alone does not prove that he exercised dominion and control over the evidence and therefore had it in his constructive possession. See State v. Walker, 369 So.2d 1345, 1346 (La. 1979). Herein, the defendant does not contest his conviction of an enumerated felony or the absence of the ten-year statutory period of limitation.
Agent Hanlon testified at the trial. According to his testimony, the defendant partially opened the apartment door after several knocks. The defendant appeared nervous and startled. The defendant informed the officers that he was alone in the apartment. When asked for identification, the defendant responded positively and closed and locked the apartment door. When the defendant slightly re-opened the door, he stated that he did not have a license or identification. Agent Hanlon smelled marijuana on the defendant's breath. Agent Hanlon placed his foot between the door and its frame to prevent closure and asked the defendant if they could enter the apartment to speak to him. According to Agent Hanlon, the defendant hesitated before stepping back to allow their entry. The defendant was informed of his Miranda[1] rights. When questioned regarding his identity, the defendant stated that his name was Joey Woodard and provided a date of birth, and an address on Wiley Drive. The defendant responded negatively when asked whether he had been smoking marijuana in the apartment and also stated that he did not own the vehicle outside of the apartment. The officers asked for consent to search the apartment and the defendant refused. The defendant was re-questioned regarding his identity and stated that his name was Joseph Woodard, this time providing a Crozier Drive address.
After reporting the information by phone, Agent Hanlon could not retrieve a match for the name, address, and date of birth provided by the defendant. Agent Hanlon informed the defendant that he would be taken into custody pending determination of his true identity and consent to search the apartment from the registered tenants. The defendant then revealed his true identity and address. The defendant also acknowledged ownership of the vehicle outside of the apartment and admitted that, in the past, he had sold and smoked marijuana while in the vehicle. The defendant further admitted to smoking marijuana in the vehicle that day. The defendant initially stated that he would consent to the search of the vehicle, but became hesitant as the officers began to execute a written consent form. The defendant stated that although there was no more marijuana in the vehicle, there might be a weapon next to the driver's door. The defendant stated that the weapon belonged to a friend who left it there a few weeks ago. The defendant initially stated that he wanted to contact an attorney before making a decision regarding consent to search the vehicle. After a brief hesitation, the defendant told the officers that they could search the vehicle. Adding that he would retrieve the car keys, the defendant walked into a bedroom and shut the door.[2]
The officers became alarmed, followed the defendant, and opened the bedroom door. They observed the defendant kneeling by the head of the bed on the right side, closest to the door. The officers instructed the defendant to stand up, and walk out of the bedroom into the kitchen area. The officers conducted a pat-down search of the defendant and handcuffed him. The officers informed the defendant that they were going to obtain a search warrant for the apartment and for the vehicle. The defendant informed the officers that he was attempting to retrieve the car keys, and indicated that they were in the bedroom under the bed covers or mattress. The keys were located as described by the defendant. Agent Hanlon retrieved the keys and everyone exited the apartment.
As they waited for search warrants, the registered tenants of the apartment and the defendant's brother arrived. The officers ultimately received and executed search warrants. A loaded Ruger .40-caliber handgun was recovered from the bedroom under the bed, within reach of the area where the defendant was observed kneeling by the bed. The defendant's identification and marijuana were also located in that bedroom. The registered tenants refused to give written statements. They denied ownership of the gun.
The defendant cites State v. Fisher, 94-2255 (La. App. 1st Cir. 12/15/95), 669 So.2d 460, writ denied, 96-0958 (La. 9/20/96), 679 So.2d 432, State v. Lamothe, 97-1113 (La. App. 5th Cir. 6/1/99), 738 So.2d 55, and State v. Smith, 98-0366 (La. App. 4th Cir. 5/12/99), 744 So.2d 73, in arguing that stronger evidence has been held insufficient to establish possession. In Fisher, the defendant and his sister were in an automobile and the gun was in his sister's purse. The defendant's sister had inadvertently left the clip on the seat, and the defendant was found with the clip in his pocket. When asked for registration papers, the defendant's sister presented a receipt showing she had purchased the gun. The defendant's sister testified that she asked the defendant to go with her to pick up her friend who was being released at midnight from prison. When they arrived at the prison, the guard asked if anyone had any weapons; and she told the guard she had a gun in her purse. She said nobody in the car knew she had the gun until the guard asked. In response to the guard's request, she unloaded the gun and gave the gun to the guard. She could not remember exactly what she did with the clip, but she thought she put it on the seat. When the guard returned the gun, she put it back into her purse. This court found that the evidence was insufficient to support the conviction for possessing a firearm after having been convicted of a felony.
In Lamothe, a statement of codefendant Lamothe placed the gun in the car with codefendant McNabb. However, the evidence failed to indicate that McNabb was aware the gun was in the car and failed to prove his intent to possess the gun. McNabb denied knowledge of the gun in a statement to the police. The deputy who recovered the gun testified that he found it on the ground near the car. McNabb's mother testified that the car and the gun belonged to her, and that she had left the gun under the seat of the car. The court found that the evidence did not support McNabb's conviction for possession of a firearm by a convicted felon.
In Smith, the defendant was pulled over for speeding. A weapon was found under the driver's seat of a vehicle and was not in plain view. The weapon was discovered only after a search by a K-9 unit. The owner of the vehicle, the defendant's mother, testified that she did not own the gun and had never seen it. The owner further testified that she had allowed several people to use the vehicle. The defendant's passenger testified that she did not become aware of the gun until it was produced during the search. The defendant did not have any ammunition on his person. The court found that the evidence did not support a conviction of being a convicted felon in possession of a firearm.
Herein, the defendant was alone in the apartment when the officers arrived. Although the officers were specifically investigating the use or presence of marijuana, the defendant alerted them to his possible possession of a firearm. While a gun was not recovered from the location described by the defendant, the driver's side of his vehicle, one was recovered from within reach of the area where the defendant was observed kneeling down next to the bed in one of the apartment's bedrooms. The defendant explained that he was retrieving his car keys that were also located in the bedroom within reach of where he was kneeling. However, the defendant closed the door after entering the bedroom, preventing the officers from observing his actions. The defendant's identification and car keys were located in the same bedroom. While the evidence presented in the instant case may not be fairly categorized as overwhelming, in light of Hearold we cannot say that the jury acted unreasonably in rejecting the defendant's hypothesis of innocence and in finding the defendant guilty as charged. This assignment of error lacks merit.

ASSIGNMENTS OF ERROR NUMBERS TWO AND FOUR
In these assignments of error, the defendant first argues that he was denied the effective assistance of counsel in that his defense counsel failed to prepare for trial and present a defense. The defendant specifically contends that his trial counsel should have called Shandra Lewis (the defendant's girlfriend at the time of the offense and one of the registered tenants of the apartment) and Marcus Stoves (the defendant's friend and the supposed owner of the weapon in question) as defense witnesses. The defendant notes that the trial judge did not question the veracity of the testimony presented by these witnesses at the motion for new trial hearing, and further found that their testimony would have prevented the jury from rejecting the reasonable hypothesis of innocence that the defendant did not possess the firearm. The defendant also contends that his defense counsel possessed and could have introduced Stoves's affidavit and the receipt of purchase for the firearm. The defendant contends that his attorney was not prepared because he had not been fully paid at the time of the trial.
Secondly, the defendant argues that he was denied effective assistance of counsel in that his counsel failed to request jury instructions on the essential elements of constructive possession and general intent. The defendant contends that the instructions did not address the element of awareness. The defendant further contends that the jury should have been informed that even if the defendant was aware of the presence of the firearm, mere acquiescence in its presence, without intent to possess it, would be insufficient to establish the element of general intent. The defendant argues that the trial court should have used the constitutional standards established by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984) in evaluating his motion for new trial on the basis of ineffective assistance of counsel.
The defendant's motion for new trial was filed by new counsel, who is now acting as appellate counsel. In the fourth assignment of error, the defendant argues that the trial court abused its discretion in denying the motion for new trial. The defendant contends that the trial court accepted the testimony of Stoves and Lewis, and yet, in contradiction, denied the motion based on former attorney Tedrick Knightshead's opposing testimony. The defendant also argues that the trial court did not properly assess the law of constructive possession in denying the motion for new trial.
At the outset, we note that the defendant's argument that his trial counsel was deficient in that he did not request further jury instructions on the essential elements of constructive possession and general intent was not raised in his motion for new trial below. Thus, this issue has not been properly preserved for appellate review. La. C.Cr P. art. 841.
The defendant's motion for new trial was pursuant to La. C.Cr P. art. 851(3), (4), and (5). The motion listed the following specific grounds: the existence of new and material evidence that notwithstanding the exercise of due diligence by the defendant was not discovered before or during the trial; that the defendant discovered a prejudicial error or defect in the proceedings; that the defendant is entitled to a new trial predicated upon ineffective assistance of trial counsel; and, finally, a claim that the ends of justice would be served by the granting of a new trial. Herein, the defendant argues that he is entitled to a new trial as a matter of strict legal right. Alternatively, the defendant argues that there was a clear abuse of discretion in this case. The defendant relies on the ineffective assistance of counsel claim.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) his attorney's performance was deficient; and (2) the deficiency prejudiced him. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial or "a trial whose result is reliable." Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. In order to show prejudice, the defendant must demonstrate that, but for counsel's unprofessional conduct, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Felder, 2000-2887, pp. 10-11 (La. App. 1st Cir. 9/28/01), 809 So.2d 360, 369-70, writ denied, XXXX-XXXX (La. 10/25/02), 827 So.2d 1173.
A claim of ineffectiveness is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192, p. 24 (La. 9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). In the instant case, we find that the record discloses evidence needed to decide the issue of ineffective assistance of counsel.
The trial court has much discretion in ruling on a motion for new trial. However, if the court exercises this discretion arbitrarily, and the judgment is unjust, the reviewing court should set aside the judgment and order a new trial. See State v. Hammons, 597 So.2d 990, 994 (La. 1992)
At the hearing on the motion for new trial, Marcus Stoves testified that he had known the defendant for approximately twenty-eight years. Stoves knew Shandra Lewis (the defendant's girlfriend) for approximately four years. The defendant and Lewis' friends were also friends of Stoves. Stoves knew Lewis before she began dating the defendant. The defense offered into evidence a receipt from Houma Auto Parts, Inc. Gun Shop to show Stoves's ownership of a .40-caliber Ruger. Lewis observed Stoves in possession of the firearm on an occasion when he had been drinking an alcoholic beverage. Lewis expressed concern over Stoves being under the influence of alcohol and in possession of the firearm. Stoves testified that he left the gun in Lewis's possession at that time, before he was deployed as a member of the Louisiana National Guard. Stoves executed an affidavit dated November 11, 2005, wherein he stated that he possessed a firearm through May 15, 2004, and left it in Houma when he was deployed to Iraq. The magazine was loaded when Stoves placed the gun in Lewis's possession, but the chamber was empty. After the defendant was arrested, Stoves spoke to the defendant's attorney (Mr. Tedrick Knightshead). Stoves had no knowledge of the defendant ever being in physical possession of the firearm. Stoves would not have been available had he been subpoenaed for trial on October 17, 2005. Stoves's service in the National Guard ended October 24, 2005. Stoves was unaware of why a round was in the chamber of the gun at the time of the defendant's arrest. Stoves knew the defendant was a convicted felon.
Shandra Lewis also testified at the motion for new trial hearing. She was the defendant's girlfriend at the time of the hearing and at the time of the offense. The defendant spent some nights at her apartment. Lewis stated that Stoves asked her to hold his gun until he returned from overseas. Lewis placed the weapon under the right side of her bed (the side she slept on) and did not tell the defendant or her roommate about its presence. Lewis stated that she did not use the firearm and that she did not remove it from under her bed. The weapon was far under the bed and, according to Lewis, it could not be reached without the use of a stick or lying down to retrieve it. Lewis placed the gun as far as her arm could reach, without pushing it any further under the bed. Other items were stored under the bed and the gun could have been inadvertently shuffled around.
On the day of the defendant's arrest, Lewis arrived at the apartment while the officers were waiting for a search warrant. Lewis was present when the gun was recovered. Lewis did not inform the officers who owned the gun at the time of the defendant's arrest because she was in shock. According to Lewis, the officers did not ask her any questions. She confirmed that the defendant kept some personal items at her apartment. According to Lewis, on the day of his arrest the defendant did not have a key to the apartment and her roommate let him in just before leaving. Lewis spoke to the defendant's attorney prior to the trial and provided the above information. Lewis would have testified at the trial had she been subpoenaed.
The defendant also called Knightshead, his trial attorney, to testify at the hearing. Just before the trial, Knightshead executed a letter informing the defendant that he would withdraw as counsel if he did not receive the balance in payment. Knightshead admitted that the defendant had not paid all of his attorney's fees by the time of the trial. Knightshead prepared an affidavit for Stoves's signature. Knightshead stated that he did not present testimony or evidence at the trial to show that Stoves was the owner of the gun because Stoves and the defendant were long-time friends and he believed Stoves' testimony would more closely connect the weapon to defendant. Knightshead testified that the defendant did not want him to call any witnesses. Knightshead further testified that the defendant informed him that he actually possessed the gun. Knightshead stated that he did not want to present perjured testimony that would have indicated otherwise.
The defendant, the final witness at the motion for new trial hearing, testified that he never told Knightshead that he possessed the firearm in question. The defendant denied not wanting any witnesses to be called, and had no concerns that Stoves or Lewis would commit perjury. According to the defendant, before his arrest he was not aware that Stoves gave the firearm to Lewis, and he had never seen it in the apartment.
While ultimately denying the motion for new trial, the trial court noted as follows:
I must say that the jury's verdict was based entirely on circumstantial evidence; and at one point during the jury deliberations, the jury returned to the courtroom with a question for the Court; and the question was who owned the gun? Obviously the jury was interested in that information, although, as a matter of law, ownership of the gun was not strictly relevant or an element of the crime of possession of a firearm by a convicted felon. ... The Court is also aware of the guiding principle that before a jury is able to return a verdict of guilty beyond a reasonable doubt in a case where all the evidence is circumstantial, the jury must rule out any other reasonable hypothesis or theory of innocence. And based on everything I've said so far, I would have to say that the jury, if it had had the information that was presented by Ms. Lewis and Mr. Stoves, most certainly could not have ruled out one reasonable theory of innocence; and that is that the gun belonged to Mr. Stoves, that it was in the possession of Ms. Lewis, that Mr. Woodard did not have any knowledge that the gun was there, and, therefore, he could not have been guilty of the crime charged.
Nonetheless, the trial court concluded that based on Knightshead's testimony, the ends of justice were served.
We find that the trial court erred in denying the motion for new trial. The trial court concluded that testimony of two witnesses that the trial counsel failed to present would have changed the outcome of the trial. Accordingly, the prejudicial nature of the trial counsel's deficiency in performance is evident. The failure to present testimony of witnesses that would have changed the outcome of the proceeding constitutes deficient performance and cannot be considered strategic. Herein, the defendant was deprived of a fair trial.
Based on the foregoing, the trial court abused its discretion in the denying the defendant's motion for new trial. Finding merit as noted above in assignments of error numbers two and four, we pretermit discussion of the third assignment of error.
CONVICTION REVERSED. SENTENCE VACATED. REMANDED FOR A NEW TRIAL.
WHIPPLE, J., dissenting.
I respectfully disagree with the majority's decision to reverse defendant's conviction of possession of a firearm by a convicted felon. LSA-R.S. 14:95.1. With regard to the majority's conclusion that trial counsel's performance was deficient in failing to call Shandra Lewis and Marcus Stoves as defense witnesses, I note that the trial court accepted as true the explanations of trial counsel concerning his trial strategy and rejected the defendant's testimony.[1] Under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial, rest with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. State v. Folse, 623 So. 2d 59, 71 (La. App. 1st Cir. 1993).
Moreover, given the trial court's decision to accept as credible the testimony of trial counsel, I find no error in the trial court's denial of the motion for new trial urged on the basis of ineffective assistance of counsel. Contrary to defendant's argument on appeal that the trial court relied on trial counsel's testimony to improperly adjudicate the defendant's guilt, in my view, the trial court considered this testimony for the proper purpose of determining whether effective assistance of counsel had been provided, i.e., whether trial counsel had strategic reasons for not calling the witnesses noted by the defendant. Thus, the defendant failed to establish a deficiency in his trial counsel's performance, preparation, and presentation of a defense, as would entitle him to a new trial.
Moreover, regarding defendant's argument that his trial counsel was deficient in that he did not request further jury instructions on the essential elements of constructive possession and general intent, including awareness and intent to possess as opposed to mere acquiescence, I note that defendant did not raise this issue in his motion for new trial below, and the instruction regarding possession that was given was sufficient. Even if it were inadequate, the guilty verdict was surely unattributable to any inadequacy as to the instruction on constructive possession. Given defendant's statements to the police regarding his awareness of a weapon, his presence and actions in the apartment, and the location of his keys and ID in the particular bedroom and area where the weapon was found, the evidence, in my view, was sufficient for the jury to find beyond a reasonable doubt that the defendant was guilty of being a convicted felon in possession of a firearm. Accordingly, I would affirm the conviction.[2]
For these reasons, I respectfully dissent from the majority's decision.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The apartment had two bedrooms.
[1] I also reject defendant's contention that the trial court violated his attorney-client privilege by allowing his trial attorney to testify at the hearing on his motion for new trial. See La. State Bar Ass'n, Art. XVI, Rule of Professional Conduct, Rule 1.6(b)(5). A lawyer's right to defend against scurrilous allegations primes the defendant's attempt to hide behind a privilege which was not created nor intended to grant him unfettered liberty to attack the professional competency of his attorney. Moreover, the Sixth Amendment right of a criminal defendant to assistance of counsel is not violated when the attorney refuses to cooperate with the defendant in presenting perjured testimony at trial. U.S. Const. Amend VI; Nix v. Whiteside, 475 U.S. 157, 171, 106 S. Ct. 988, 996, 89 L. Ed. 2d 123 (1986). Indeed, counsel may threaten to withdraw and to reveal contemplated perjury rather than present perjured testimony, without violating the right to counsel.
[2] On review of the record pursuant to LSA-C.Cr.P. art. 920(2), I note that a sentencing error occurred herein. Louisiana Code of Criminal Procedure article 884 authorizes the imposition of a teen of imprisonment up to one year for default in the payment of a fine or costs. The trial court erred in imposing an additional sentence of imprisonment for one year at hard labor in default of the payment of a $1,000.00 fine and court costs because article 884 authorizes only "imprisonment." State v. Banks, 97-2257, p. 7 (La. App. 1st Cir. 9/25/98), 721 So. 2d 24, 27, writ denied, 98-3210 (La. 4/23/99), 742 So. 2d 877. However, neither defendant nor the State has raised this issue on appeal.