DRAKE, J.
li>The State charged the defendant, David Diante Bias, by bill of information with one count of armed robbery, a violation of La. R.S. 14:64 (count I); one count of armed robbery with the use of a firearm, a violation of La. R.S. 14:64.3(A) *1016 (count II); and one count of a convicted felon possessing a firearm or carrying a concealed weapon, a violation of La. R.S. 14:95.1 (count III). At arraignment, the defendant pled “not guilty” on all counts. The defendant filed a motion to form a sanity commission. On joint motion of counsel, the sanity hearing was submitted on the reports of the commission’s members, with the trial court subsequently ruling that the defendant had the capacity to proceed to trial. Following trial, a unanimous jury found the defendant guilty as charged.
The State thereafter filed a habitual offender bill of information, seeking enhancement of the defendant’s armed robbery conviction, alleging he was a fourth-felony habitual offender. Prior to the habitual offender hearing and adjudication, the trial court sentenced the defendant to imprisonment for thirty years at hard labor, without the benefit of probation, parole, or suspension of sentence on count I, with an additional five years at hard labor, without the benefit of probation, parole, or suspension of sentence, due to his use of a firearm in connection with the armed robbery on count II, to run consecutive to the sentence imposed on count I. The trial court also sentenced the defendant to fifteen years at hard labor on count III, to run concurrent with his sentences on counts I and II. Thereafter, pursuant to an amended habitual offender bill of information, which alleged the defendant was a third-felony habitual offender,[1] the defendant | awithdrew his “not guilty” plea and, after a Boykin[2] examination, entered a guilty plea as a second-felony habitual offender,[3] in accordance with La. R.S. 15:529.1(A)(l)(a) (prior to its amendment by 2010 La. Acts Nos. 911, § 1 and 973, § 2). The trial court vacated the defendant’s previous sentence and subsequently sentenced him to imprisonment for forty-nine and one-half years at hard labor, without the benefit of probation, parole, or suspension of sentence, with credit for time served. The defendant filed a motion to reconsider sentence, which the trial court denied. The defendant now appeals, assigning error to the sufficiency of the evidence, the effectiveness of his counsel, and his sentence.

STATEMENT OF FACTS

On May 21, 2010, at 5:00 a.m., the victim, Leo Mitchell, was preparing to begin his shift as a truck driver for Southern Scrap in Morgan City, when he noticed a gray Pontiac Trans Am approaching “real, real slow.” Mitchell testified that at first, based on the circumstances, he believed he was about to be robbed, however, the car passed his location, and stopped behind him. As he began to drive away, Mitchell noticed an individual, whom he described as “dark looking,” short, with “dread[s] in his hair,-” and weighing approximately one hundred and fifty pounds, standing in front of his truck. This individual asked Mitchell where Amelia (a town in St. Mary *1017 Parish) was located, and then Mitchell noticed another individual emerge from “underneath the trailer with [a] gun.” Mitchell described the armed individual as also having dreadlocks in his hair, black, dark looking, and weighing approximately one hundred and fifty-three pounds and holding a nickel-plated gun. The gunman ordered Mitchell to turn around, and then held the gun to his head. The gunman instructed Mitchell to hand over his wallet, whereby the |4gunman removed two hundred and thirteen dollars in cash. The gunman also took Mitchell’s cellphone. Next, the gunman and the other individual switched positions, with the original gunman saying, “[i]f he moves, shoot him.” The original gunman then searched Mitchell’s personal vehicle, and after not finding anything to take, the original gunman ordered Mitchell to lay on the hood of his car for fifteen minutes. After approximately twenty minutes, Mitchell stood up, noticed the two individuals had left, and called the police.
Detective Travis Trigg of the Morgan City Police Department responded to Mitchell’s call. After listening to Mitchell’s version of the events, Detective Trigg reviewed the security footage, which corresponded with Mitchell’s account of the robbery. Detective Trigg then alerted other police officers to “be on the lookout” for a silver Pontiac Grand Am.[4] Officer Michael Broussard received Detective Trigg’s alert, observed and identified the silver Pontiac sedan, and executed a stop of the vehicle. Detective Trigg arrived to aid Officer Broussard and testified he observed one male and one female suspect in the back of Officer Broussard’s vehicle, while Officer Broussard testified the two suspects were both male.
At trial, witness for the State, Dwayne Skinner, testified that on the day of the robbery, he, the defendant, and a minor, D.W.,[5] were traveling to a strip club in Skinner’s girlfriend’s gray Pontiac car. As they were passing Southern Scrap, the defendant instructed Skinner to stop the car, because he saw a “lick,” a phrase I,.¡Skinner defined as “about to rob a man.” Skinner turned around, and after the defendant and D.W. exited the car, Skinner left the scene,, only to return when he received a telephone call from the defendant asking that he and D.W. be picked up. Skinner noted that the defendant was in possession of a cellphone upon his return to the car, which the defendant was not in possession of prior to being dropped off. Skinner testified that the defendant had a chrome revolver on his left side, in his waist band, when he re-entered the car. Once they left Southern Scrap, Skinner drove to a local motel, where the defendant obtained a room. After leaving the motel, Skinner, still driving the gray Ponti *1018 ac car, picked his girlfriend up from her house. As Skinner and his girlfriend were traveling to a local clothing store, they were spotted by the police and were subsequently pulled over. Skinner, after being questioned by the police officers regarding his actions in the robbery, informed the police officers that he dropped the defendant off at the motel.
Following Skinner’s traffic stop, Morgan City Chief of Police Travis Crouch[6] traveled to the local Days Inn Motel with additional police officers and made entry into the room identified as being rented by the defendant. Upon entry, Chief Crouch identified the defendant and D.W., then handcuffed each to the foot of the beds until a search warrant could be obtained. Once the warrant was issued, Chief Crouch located a chrome or stainless revolver tucked under the comforter of the bed the defendant was originally sitting on. Further, a cell phone was found inside a bag next to the defendant’s bed. Moreover, upon a search of the defendant’s room, a receipt in his name was located indicating the cost of the motel room was $50.00, and $163.00 in currency was secured, [totaling $213.00]. (R.594-97) Chief Crouch thereafter booked the defendant into the local jail.

\ SUFFICIENCY OF THE EVIDENCE

In his first assignment of error, the defendant asserts that the evidence presented at trial was insufficient to support his convictions. Specifically, he argues that, “[a]t the time of being booked[,] Bias’ booking photo shows Bias with a close and low haircut without dreadlocks,” although Mitchell’s testimony indicated that both of the robbers had dreadlocks. Further, the defendant contends that “it needed to be asked if there was any evidence of a recent haircut by Bias, or were dreads found in the hotel room, or was there anything to suggest he had dreads a few hours prior to his arrest.” Next, the defendant contends that “[t]he State did not prove that Bias was in possession of the firearm located in the hotel room.” He argues that “[w]hen officers entered the room to [detain] Bias and the juvenile[,] they didn’t immediately see the gun later located on the bed.” “[At the] time of entering the room there were two people inside[,] both Bias and the juvenile[,] D.W.,” and “[t]he State failed to prove that Bias possessed the firearm[,] either actually or constructively.”
The standard of review for sufficiency of the evidence to support a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime, and defendant’s identity as the perpetrator of that crime, beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Patton, 10-1841 (La.App. 1 Cir. 6/10/11), 68 So.3d 1209, 1224. In conducting this review, we must also be expressly mindful of Louisiana’s circumstantial evidence test, i.e., “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” La. R.S. 15:438; State v. Millien, 02-1006 (La.App. 1 Cir. 2/14/03), 845 So.2d 506, 508-09.
|7When a conviction is based on both direct and circumstantial evidence, the reviewing court must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the *1019 direct evidence and the facts reasonably inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond' a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Wright, 98-0601 (La.App. 1 Cir. 2/19/99), 780 So.2d 485, 487, writs denied, 99-0802 (La.10/29/99), 748 So.2d 1157 and 00-0895 (La.11/17/00), 773 So.2d 732.
The defendant’s conviction on count I was for armed robbery. Armed robbery is “the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.” La. R.S. 14:64(A). A dangerous weapon is defined as any “instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm.” La. R.S. 14:2(A)(3). Armed robbery is a general intent crime. In general intent crimes, the criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. State v. Payne, 540 So.2d 520, 523-24 (La.App. 1 Cir.), writ denied, 546 So.2d 169 (La.1989).
The defendant’s conviction on count III was for possession of a firearm or carrying a concealed weapon as a convicted felon. To prove a violation of La. R.S. 14:95.1, the State must prove: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year period of limitation; and (4) general intent to commit the offense. State v. Morris, 99-3075 (La.App. 1 Cir. 11/3/00), 770 So.2d 908, 918, writ denied, 00-3293 (La.10/12/01), 799 So.2d 496, cert. denied, 535 U.S. 934, 122 S.Ct. 1311, 152 L.Ed.2d 220 (2002).
| ¡/Where the key issue is the defendant’s identity as the perpetrator of the crime, rather than whether the crime was committed, the State is required to negate any reasonable probability of misidentifieation to carry its burden of proof. State v. Johnson, 99-2114 (La.App. 1 Cir. 12/18/00), 800 So.2d 886, 888, writ denied, 01-0197 (La.12/7/01), 802 So.2d 641. Positive identification by even one witness may be sufficient to support a conviction. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Davis, 00-2685 (La.App. 1 Cir. 11/9/01), 818 So.2d 76, 80.
A thorough review of the record indicates that any rational trier of fact, viewing the evidence presented in this case in the light most favorable to the State, could find that the evidence proved beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, all of the elements of armed robbery, felon in possession of a firearm, and the defendant’s identity as the perpetrator of the crimes. The verdicts rendered in this case indicate the jury credited the testimony of Skinner and the other witnesses against the defendant and rejected the defendant’s attempts to discredit those witnesses. When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So.2d 55, 61 (La.App. 1st Cir.), writ denied, 514 So.2d 126 (La.1987). No such hypothesis exists in the instant case.
This court will not assess the credibility of witnesses or reweigh the evidence to overturn a factfinder’s determination of guilt. Furthermore, the trier of fact may accept or reject, in whole or in *1020 part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the |3matter is on the weight of the evidence, not its sufficiency. State v. Lofton, 96-1429 (La.App. 1 Cir. 3/27/97), 691 So.2d 1365, 1368, writ denied, 97-1124 (La.10/17/97), 701 So.2d 1331. After reviewing the evidence, we cannot say that the jury’s determination was irrational under the facts and circumstances presented to them. It was not irrational for the jury to determine the defendant constructively possessed the firearm recovered from under the comforter on the bed where he was sitting. See State v. Plain, 99-1112 (La.App. 1 Cir. 2/18/00), 752 So.2d 337, 342. An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected, by the jury. State v. Calloway, 07-2306 (La.1/21/09), 1 So.3d 417, 418 (per curiam).
Therefore, this assignment of error is without merit.

INEFFECTIVE ASSISTANCE OF COUNSEL

In his second and third assignments of error, the defendant contends that his trial counsel was ineffective, thereby depriving him of his Sixth Amendment right to effective assistance of counsel. In his second assignment of error, he argues that his trial counsel failed to present exculpatory evidence which proved someone other than himself committed the instant crimes Specifically, he notes that in February 2012, D.W., the juvenile allegedly connected with the defendant at the time of the robbery, executed an affidavit whereby D.W. “[took] full responsibility for the Armed Robbery and possession of the firearm that was used during the robbery and that was located during the arrest of D.W. and Bias.” Furthermore, the defendant contends that since Mitchell described both of his assailants as having dreadlocks, “[t]he affidavit was clearly exculpatory since the booking photo of Bias taken on May 22, 201[0], after his arrest show[ed] he didn’t have dreadlocks.” The defendant concludes by asserting that “[t]rial counsel’s] failure | into place this exculpatory evidence before the jury denied [Bias] his right to present a defense,” and, therefore, constituted ineffective assistance of counsel. In his third assignment of error, the defendant briefly asserts his conviction should be overturned “since trial counsel allowed the case to proceed without first determining Bias’ mental capacity at the time of the alleged offenses.” More specifically, the defendant avers that “[t]rial [c]ounsel[’s] failure to object to the Sanity Commission reports ... amounted to ineffective assistance of counsel.”
A claim of ineffective assistance of counsel is generally relegated to post-conviction proceedings, unless the record permits definitive resolution on appeal. State v. Miller, 99-0192 (La.9/6/00), 776 So.2d 396, 411, cert. denied, 531 U.S. 1194, 121 S.Ct. 1196, 149 L.Ed.2d 111 (2001). However, where the claim is raised as an assignment of error on direct review and where the record on appeal is adequate to resolve the matter, the claims should be addressed in the interest of judicial economy. State v. Calhoun, 96-0786 (La.5/20/97), 694 So.2d 909, 914.
A defendant is entitled to effective assistance of counsel under the Sixth Amendment to the United States Constitution and Article I, § 13 of the Louisiana State Constitution. In assessing a claim of ineffectiveness, a two-pronged test is employed. The defendant must show that (1) *1021 his attorney’s performance was deficient, and (2) the deficiency prejudiced him. The error is prejudicial if it was so serious as to deprive the defendant of a fair trial, or “a trial whose result is reliable.” Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). In order to show prejudice, the defendant must demonstrate that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068; State v. Felder, 00-2887 (La.App. 1 Cir. 9/28/01), 809 So.2d 360, 370, writ denied, 01-3027 (La.10/25/02), 827 So.2d 1173. Further, it is unnecessary to address the issues of both counsel’s performance and prejudice to the defendant if the In defendant makes an inadequate showing on one of the components. State v. Serigny, 610 So.2d 857, 860 (La.App. 1 Cir. 1992), writ denied, 614 So.2d 1263 (La.1993).
All of the deficiencies alleged by the defendant on appeal address matters of trial preparation and strategy. Decisions relating to investigation, preparation, and strategy require an evidentiary hearing,[7] and therefore, cannot possibly be reviewed on appeal. State v. Allen, 94-1941 (La.App. 1 Cir. 11/9/95), 664 So.2d 1264, 1271, writ denied, 95-2946 (La.3/15/96), 669 So.2d 433. Additionally, the presentation of evidence was a strategic decision, and whether or not to present evidence of the defendant’s insanity at the time of the offense was likewise a strategic decision. Defense counsel decided not to pursue that defense and thus, evidence of insanity at the time of the offense was not admissible. See La.C.Cr.P. art. 651. Further, under our adversary system, once a defendant has the assistance of counsel, the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with an accused and his attorney. The fact that a particular strategy is unsuccessful does not establish ineffective assistance of counsel. Furthermore, “[t]he election to call or not call a particular witness is a matter of trial strategy and not, per se, evidence of ineffective counsel.” State v. Folse, 623 So.2d 59, 72 (La.App. 1st Cir.1993). Therefore, these assignments of error are without merit or otherwise not subject to appellate review.

EXCESSIVE SENTENCE

In his last assignment of error, the defendant contends his sentence as a second-felony habitual offender is unconstitutionally excessive. Specifically, he asserts that “[t]he 49 1/2 year sentence [he] received was sufficiently close to the maximum sentence [he] could have received” and, therefore, is unconstitutionally excessive and “should be reversed and remanded for re-sentencing.”
L/The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Although a sentence may be within statutory limits, it may violate the defendant’s constitutional right against excessive punishment and is subject to appellate review. State v. Sepulvado, 367 So.2d 762, 767 (La.1979). Generally, a sentence is considered excessive if it is grossly disproportionate to the severity of the crime or is nothing more than the needless imposition of pain and suffering. Further, a sentence is considered grossly disproportionate if, when the crime and punishment are considered in light of the harm to society, it is *1022 so disproportionate as to shock one’s sense of justice. A trial judge is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of manifest abuse of discretion. State v. Hurst, 99-2868 (La.App. 1 Cir. 10/3/00), 797 So.2d 75, 83, writ denied, 00-3053 (La.10/5/01), 798 So.2d 962.
Louisiana Code of Criminal Procedure Article 894.1 sets forth the factors for the trial court to consider when imposing sentence. While the entire checklist of Article 894.1 need not be recited, the record must reflect that the trial court adequately considered the guidelines. See State v. Herrin, 562 So.2d 1, 11 (La.App. 1st Cir.), writ denied, 565 So.2d 942 (La.1990). The articulation of the factual basis for a sentence is the goal of Article 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. State v. Landos, 419 So.2d 475, 478 (La.1982). Even when the trial court assigns no reasons, the sentence will be set aside on appeal and remanded for sentencing only if the record is inadequate or clearly indicates the "sentence is excessive. State v. Knight, 11-0366 (La.App. 1 Cir. 9/14/11), 77 So.3d 302, 304, writ denied, 11-2240 (La.2/17/12), 82 So.3d 283. On appellate review of sentence, the relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. State v. Thomas, 98-1144 (La.10/9/98), 719 So.2d 49, 50 (per curiam).
Here, the defendant was adjudicated a second-felony habitual offender, and his sentence on count I was enhanced based upon La. R.S. 15:529.1(A)(l)(a) (pri- or to amendments by 2010 La. Acts Nos. 911, § 1, and 973, § 2), which provides:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction.
Pursuant to La. R.S. 14:64(B), armed robbery carries a sentence of imprisonment at hard labor “for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.” As such, the defendant’s sentencing exposure as a second-felony habitual offender was forty-nine and one-half years to one hundred and ninety-eight years. See La. R.S. 14:64(B) & La. R.S. 15:529.1(A)(l)(a) (prior to amendments by 2010 La. Acts Nos. 911, § 1, and 973, § 2). Contrary to the defendant’s assertion that his sentence was “sufficiently close” to the maximum sentence possible, the defendant actually received the statutory minimum sentence — imprisonment at hard labor for forty-nine and one-half years without benefit of probation, parole, or suspension of sentence.
A thorough review of the record reveals the trial court adequately considered the criteria of Article 894.1 and did not manifestly abuse its discretion in imposing the sentence herein. See La.C.Cr.P. art. 894.1(B)(6), (B)(10), & (B)(19). Additionally, the sentence imposed was not grossly disproportionate to the severity of the offense and thus, was not unconstitutionally excessive. Furthermore, the | defendant’s sentence does not violate the prescribed sentencing provisions. The trial court did not abuse its wide discretion when it sentenced the defendant as a recidivist and punished him for the instant *1023 offense in light of his continuing disregard for the laws of our state. See State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677. Therefore, this assignment of error lacks merit.
CONVICTIONS, HABITUAL OFFENDER ADJUDICATION, AND SENTENCES AFFIRMED.
J. THERIOT, concurs.

. Predicate # 1 was set forth as the defendant's December 8, 2003 guilty plea, under Sixth Judicial District Court Docket No. 03-F-109125 to aggravated battery, a violation of La. R.S. 14:34. Predicate # 2 was set forth as the defendant’s January 23, 2006 guilty plea under Sixteenth Judicial District Court Docket No. 05-168143 to distribution of a Schedule II controlled dangerous substance (cocaine), a violation of La. R.S. 40:967(A)(1). (R.207-08, 832).

. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

. Although billed as a third-felony habitual offender, the defendant pled guilty to being a second-felony habitual offender pursuant to a plea deal offered by the State, in which the State amended its bill to reflect the defendant as a second-felony habitual offender.

. The victim testified that the defendant arrived in a Pontiac Trans Am, while Detective Trigg testified the defendant arrived in a Pontiac Grand Am. Since the detective viewed the surveillance footage of the vehicle and could identify it Independently, the contradiction in testimony is inconsequential. See Brien v. Leon Angel Constructors, Inc., 42,904 (La.App. 2 Cir. 3/12/08), 978 So.2d 576, 587, writ denied, 08-0802 (La.6/6/08), 983 So.2d 919. Furthermore, the fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Faye, 13-1295 (La.App. 1 Cir. 2/18/14) (unpublished opinion), 2014 WL 644757, at *3-4, writ denied, 14-0505 (La.10/3/14), 149 So.3d 794.

. To protect the identity of the minor involved in this appeal, we will use initials rather than the full name of the minor throughout the opinion.

. At the time of the defendant's arrest, Chief Crouch was a lieutenant with the Morgan City Police Department in charge of detectives, narcotics, and internal affairs.

. The defendant would have to satisfy the requirements of La.C.Cr.P. art. 924 et seq., in order to receive such a hearing.