NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NUMBER 2021 KA 0625

STATE OF LOUISIANA

VERSUS

ZARIUS J. BROWN

**Judgment Rendered:** FEB 1 6 2022

\* \* \* \* \* \*

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of Washington
State of Louisiana
Docket Number 18-CR10-139415
Honorable William H. Burris, Judge Presiding

\* \* \* \* \* \*

Warren L. Montgomery
District Attorney
J. Bryant Clark, Jr.
Iain Dover
Assistant District Attorneys
Covington, Louisiana

Counsel for Appellee
State of Louisiana

Gwendolyn K. Brown
Baton Rouge, Louisiana

Counsel for Defendant/Appellant
Zarius J. Brown

\* \* \* \* \* \*

**BEFORE: GUIDRY, HOLDRIDGE, AND CHUTZ, JJ.**

Chutz, J. Concurs and assigns reasons.

Holdridge, J dissents w/ reasons

**GUIDRY, J.**

The defendant, Zarius J. Brown, was charged by bill of information with attempted first degree murder of a peace officer (count 1), a violation of La. R.S. 14:27 and La. R.S. 14:30; illegal possession of stolen things (value of $1,000 - $5,000) (count 2), a violation of La. R.S. 14:69; and aggravated criminal damage to property (count 3), a violation of La. R.S. 14:55. He pled not guilty and, following a jury trial, was found guilty as charged on all counts. The defendant filed a motion for new trial, which was denied. For the attempted first degree murder conviction, the defendant was sentenced to forty years imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. For the illegal possession of stolen things conviction, the defendant was sentenced to five years imprisonment at hard labor. For the aggravated criminal damage to property conviction, the defendant was sentenced to twelve years imprisonment at hard labor. The sentences were ordered to run concurrently. The defendant filed a motion to reconsider sentence, which was denied. The defendant now appeals, designating six assignments of error. We reverse the convictions and sentences on all counts and remand for a new trial.

## FACTS

The three Pires brothers owned a house-building business in New Orleans. They owned some dump trucks, two Bobcats and a Caterpillar (skid steers). One of the dump trucks, which was carrying the Caterpillar, was stolen. The Caterpillar had a GPS tracker on it, which indicated the Caterpillar was in Washington Parish. On July 30, 2018, the brothers drove to Washington Parish to locate their property. Rafael Pires was driving around when their dump truck passed him. The Caterpillar was not on the truck. Rafael turned around, followed the truck, and called 911. Shortly thereafter, Rafael lost sight of the truck.

Lieutenant Brent Goings, with the Washington Parish Sheriff's Office, was

2

in the area and received the dispatch of a stolen truck. Lieutenant Goings's police unit was a white Dodge Charger. Lieutenant Goings saw the dump truck, driven by the defendant, at the intersection of Highways 1056 and 450. Lieutenant Goings got behind the defendant and activated his lights and sirens. The defendant did not stop. After about a two-mile chase, the defendant stopped on Union Chapel Road, and Lieutenant Goings stopped behind him and put his vehicle in park and waited. Lieutenant Goings began to step out of the Charger when he saw the defendant put the truck in reverse, whereupon he got back inside the Charger. The defendant pushed the Charger back until it hit an embankment and could not be pushed back any farther. Lieutenant Goings got out of his vehicle and fired several shots at the driver's side door of the truck, then took cover behind his own vehicle.

Shortly thereafter, backup arrived. Officers checked the truck, but the defendant had fled. A canine team was called, and the defendant was found lying in the high brush about thirty-five yards from Union Chapel Road.

The Caterpillar was found in a nearby wooded area. It appeared to have fallen from the dump truck and was damaged. In addition to the bullet holes in the door and the damage to the hood, the ignition on the dump truck had been broken.

The defendant did not testify at trial.[1]

The defendant's assignments of error are as follows:

1. The trial court erred in denying the defendant's requests for continuance.

2. The trial court erred in proceeding to trial without the defendant and without taking any protective actions to preserve the integrity of the trial.

3. The evidence is insufficient to support the conviction for attempted first degree murder.

4. The trial court erred in instructing the jury regarding the State's burden of proof

---

[1] The defendant absconded during trial. This issue is addressed in the second assignment of error.

3

with respect to the charge of attempted first degree murder.

5. The defendant was denied the effective assistance of counsel.

6. The trial court erred by denying the motion for new trial.

## ASSIGNMENT OF ERROR NO. 1

In his first assignment of error, the defendant argues the trial court erred in denying his request for a continuance. Specifically, the defendant contends he was unprepared to go forward when, prior to voir dire, the State amended the charge of simple criminal damage to property to aggravated criminal damage to property.[2]

Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner, and except as provided in La. R.S. 14:55, by any means other than fire or explosion. La. R.S. 14:56(A)(1). Aggravated criminal damage to property is the intentional damaging of any structure, watercraft, or movable, wherein it is foreseeable that human life might be endangered, by any means other than fire or explosion. La. R.S. 14:55(A).

Both crimes are similar and both are general intent crimes. See La. R.S. 14:10(2); State v. Elliott, 19-0029, p. 6 (La. App. 1st Cir. 7/22/19), 2019 WL 3296982, at *3 (unpublished); State v. Dawson, 18-0257, p. 5 (La. App. 1st Cir. 9/21/18), 2018 WL 4520104, at *2 (unpublished). With the amended bill of information, the State took on the added burden of having to prove the extra element of the foreseeability that human life might be endangered. At any rate, defense counsel had been representing the defendant for well over a year in this

---

[2] Defense counsel also took issue with the State's notice of other crimes evidence (defendant was arrested for driving a stolen truck) about a week prior to trial. The trial court found the evidence was "very similar" and ruled that it was admissible. See La. C.E. art. 403. The defendant's brief, in the first assignment of error, simply mentions this issue of continuance based on other crimes evidence with no argument. The actual argument set forth in this assignment of error is the trial court's denial of defense counsel's motion to continue because the bill of information had been amended just prior to the start of trial. Moreover, just after the trial court's ruling on the other crimes evidence, defense counsel informed the trial court it was not wrong for allowing the evidence in. At any rate, we find the trial court did not abuse its discretion in allowing the other crimes evidence. The defendant has made no showing of actual prejudice. See State v. McCoy, 16-948, pp. 15-16 (La. App. 3rd Cir. 5/10/17), 219 So. 3d 538, 548-49, writ denied, 17-1151 (La. 5/25/18), 242 So. 3d 1232.

4

case, which involved rather straightforward facts. It could not have surprised defense counsel that ramming a police vehicle with a large dump truck might endanger human life and that at any time the State could have amended the bill of information. Moreover, the State offered to sever the aggravated criminal damage to property charge and proceed to trial on the other two counts. Defense counsel declined the offer, but still insisted he needed more time to adequately prepare.

Louisiana Code of Criminal Procedure article 489 provides in pertinent part:

> If it is shown, on motion of the defendant, that the defendant has been prejudiced in his defense on the merits by the defect, imperfection, omission, uncertainty, or variance, with respect to which an amendment is made, the court shall grant a continuance for a reasonable time. In determining whether the defendant has been prejudiced in his defense upon the merits, the court shall consider all the circumstances of the case and the entire course of the prosecution.

As a general rule, the denial of a continuance is not grounds for reversal of a criminal conviction absent an abuse of discretion and a showing of specific prejudice caused by denial of the continuance. It is incumbent upon the defendant to show in what respect his defense has been prejudiced by the amendment of the bill. State v. Delandro, 01-2514, p. 5 (La. App. 1st Cir. 5/10/02), 818 So. 2d 1011, 1015.

We agree with the trial court's reasoning in denying the motion for a continuance wherein it found in pertinent part:

> And certainly given the factual similarity, it certainly should have triggered some kind of response or notice that this was going to come.
> Nevertheless, there's no surprise information here. The prior bad act was known, and it has been known for some time. The matter has been set at least as a back-up priority on two separate occasions, as far as I can recall. So we will move forward today.
> As to the amended bill, certainly they can amend it at any given time. However, given the opportunity that the assistant district attorney has offered to sever that, I don't think that there's any prejudice, if you don't want to move forward.
> I mean factually, it's going to be the same facts that come forward. It is an additional element of the crime. And I understand your argument as to that. But I don't think that that would really alter the way that you would prepare and try the case.
> But if you do feel that you would be prejudiced by hearing that,

the opportunity to sever it and have it at a separate time period certainly has been presented. And I'll give you a couple minutes to discuss that.

This assignment of error is without merit.

## ASSIGNMENT OF ERROR NO. 2

In his second assignment of error, the defendant argues the trial court erred in proceeding to trial without his presence and without taking any protective actions to preserve the integrity of the trial. Specifically, the defendant contends the trial court made no effort to ascertain whether the defendant's absenting himself from trial was voluntary.

On the first day of trial, the defendant was with defense counsel while the first panel of prospective jurors on voir dire were questioned by the trial court and then by the prosecutor. Following this questioning, the trial court took a recess for a ten to fifteen minute restroom break. During this break, the defendant left the courthouse and did not return.

The trial court noted that the defendant had voluntarily absented himself after trial had commenced. Thus, according to the trial court, the defendant's presence was not required, and the trial would continue. The following exchange then took place:

> By Mr. Hjortsberg [defense counsel]: . . . Furthermore, from my perspective, I don't intend to get up there and say anything at any point during this trial. If he is not here, I cannot effectively represent him.
>
> By the court: That's been his own choice. He voluntarily absented himself.
>
> By Mr. Hjortsberg: I mean, Judge, I get that. But, I mean, I can't go forward with this trial without him next to me. And I'm going to be forced to sit here and say nothing and continue to repeat that, that I can't effectively represent him.
>
>                *           *           *
>
> By the court: But at the same time, I have 40 some odd people take off work to be here for a jury. Here we are two and a half hours into a stinking jury voir dire, and he decides to run. It's his own fault.

By Mr. Hjortsberg: Judge, I completely agree. I would ask that you attach him. And he will be picked up and, you know, that will be that. But, I can't – I'm telling you that I can't, I can't do anything with this, under the circumstances. I just can't. And I think that would absolutely come back as ineffective.

Because I'm just, I'm not prepared to go forward without the person who [is] the most essential person, particularly in a case like this.

By the court: You know the facts of the case. You have visited with your client. You have done all the prep work to do it. The fact that he absented himself is his own fault. He has to deal with consequences.

I think you are effective. You know what is going on. You know what the case is about. You can effectively voir dire this jury and pick a jury. And if he doesn't want to be here to help you, that is his own decision. I think you are perfectly adequate and effective, to be able to do this without him. So let's proceed.

Defense counsel then informed the trial court that if it forced him to proceed to trial, he would "be forced to sit there and do nothing and say nothing." The jury was picked without any input from defense counsel.

Louisiana Code of Criminal Procedure article 831 states in pertinent part:

A. Except as may be provided by local rules of court in accordance with Articles 522, 551, and 562 a defendant charged with a felony shall be present at all of the following:

*     *     *

(4) At all times during the trial when the court is determining and ruling on the admissibility of evidence.
(5) In trials by jury, at all proceedings when the jury is present, and in trials without a jury, at all times when evidence is being adduced.
(6) At the rendition of the verdict or judgment, unless he voluntarily absents himself.

Louisiana Code of Criminal Procedure article 832, which sets forth exceptions to the rule that a defendant must be present during a jury trial, states in pertinent part:

A. A defendant initially present for the commencement of trial shall not prevent the further progress of the trial, including the return of the verdict, and shall be considered to have waived his right to be present if his counsel is present or if the right to counsel has been waived and … :
(1) He voluntarily absents himself after the trial has commenced, whether or not he has been informed by the court of his obligation to

7

be present during the trial.[3]

The defendant herein argues there has been no showing or even any inquiry into whether his absence was voluntary. The trial court, according to the defendant, merely operated on the assumption of voluntariness and proceeded to trial with no regard to ensure "the case even fell within the class of cases in which it is permissible to proceed with an absent defendant." The defendant then cites to State v. Jackson, 52,606, pp. 6-7 (La. App. 2nd Cir. 4/10/19), 268 So. 3d 1217, 1222-23, writ denied, 19-00699 (La. 10/15/19), 280 So. 3d 560, and writ denied, 19-00797 (La. 1/28/20), 291 So. 3d 1056, and suggests that the court therein "conducted a full blown hearing to determine whether or not the defendant's absence from trial was voluntary prior to proceeding."

The defendant is incorrect. In Jackson, the second circuit referred to one of its earlier decisions, State v. Landrum, 35,053, pp. 5-6 (La. App. 2nd Cir. 9/26/01), 796 So. 2d 94, 98, writ denied, 03-0493 (La. 2/20/04), 866 So. 2d 823, wherein the second circuit found that the trial court, after conducting a hearing to determine if Landrum had voluntarily absented himself, had not abused its discretion in finding that Landrum voluntarily absented himself from the trial after it began and that the trial could continue without him.

In Jackson, 52, 606 at pp. 7-8, 268 So. 3d at 1223, the defendant was present when trial commenced. When Jackson did not appear for the second day of trial, his counsel informed the trial court that he had gone to Jackson's home that morning and saw his vehicle in the driveway. Jackson's counsel added that he spoke to Jackson over the phone, and Jackson said he would meet him. The trial court waited about one hour to see if Jackson would appear before moving forward with the trial. Jackson argued on appeal the trial court erred in continuing his trial

---

[3] A jury trial commences when the first prospective juror is called for examination. La. C.Cr.P. art. 761. Thus, trial had already begun when the defendant absented himself.

8

in absentia without proof on the record that he was voluntarily absent. In affirming Jackson's conviction and sentence, the second circuit found:

> [I]t was reasonable for the court to assume Jackson's absence was voluntary when he was present on the first day, but did not show for court on the second day of trial. Jackson's attorney had been in contact with him earlier that morning when Jackson changed their plans on how he would get to the courthouse. His later attempts to contact Jackson when he did not appear were unsuccessful. Furthermore, no explanation was provided for Jackson's absence. Finally, we note that Jackson's counsel was present for the remainder of the trial. Based on these circumstances, we conclude that it was not an abuse of discretion for the trial court to continue Jackson's trial in his absence. Of all the rights granted to defendants by the Constitutions of our country and state, invidiously manipulating the criminal justice system is not one of them.

Id.

Similarly, it was reasonable for the trial court herein to assume the defendant's absence was voluntary. The defendant was with defense counsel during voir dire. During a fifteen-minute break, the defendant left the building and never returned. No explanation was provided for the defendant's absence. Moreover, as the above exchange indicates, the trial court twice noted that the defendant had voluntarily absented himself, and defense counsel agreed with the trial court. There is nothing in these facts that would suggest the defendant did anything other than voluntarily absent himself. Defense counsel was present at every stage of the trial, and his presence was sufficient to satisfy the due process requirements of La. C.Cr.P. arts. 831 and 832. See State v. Bolton, 408 So. 2d 250, 257-58 (La. 1981); Jackson, 52,606 at p. 7, 268 So. 3d at 1222.

This assignment of error is without merit.

9

## ASSIGNMENT OF ERROR NO. 3

In his third assignment of error, the defendant argues there was insufficient evidence to convict him of attempted first degree murder. Specifically, the defendant contends the State failed to prove he had the specific intent to kill.[4]

A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof of the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. C.Cr.P. art. 821(B); State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So. 2d 654, 660. The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585, p. 5 (La. App. 1st Cir. 6/21/02), 822 So. 2d 141, 144.

First degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm upon a peace officer. La. R.S. 14:30(A)(2). An attempted first degree murder requires that the offender do or omit to do an act for the purpose of and tending directly toward the accomplishing of his object and have the specific intent to kill. .See La. R.S. 14:27(A). While the

---

[4] When the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. State v. Hearold, 603 So. 2d 731, 734 (La. 1992).

specific intent to inflict great bodily harm may support a conviction for murder, in order to support a conviction for attempted murder, only specific intent to kill is sufficient. See State v. Hongo, 96-2060, pp. 2-3 (La. 12/2/97), 706 So. 2d 419, 420.

Specific intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Such state of mind can be formed in an instant. State v. Cousan, 94-2503, p. 13 (La. 11/25/96), 684 So. 2d 382, 390. Specific intent need not be proven as a fact, but may be inferred from the actions of defendant. State v. Mickelson, 12-2539, p. 6 (La. 9/3/14), 149 So. 3d 178, 182. The existence of specific intent is an ultimate legal conclusion to be resolved by the trier of fact. State v. Dickerson, 16-1336, p. 5 (La. App. 1st Cir. 4/12/17), 218 So. 3d 633, 638, writ denied, 17-1147 (La. 8/31/18), 251 So. 3d 1062.

The defendant argues in brief that there was insufficient circumstantial evidence to prove he had the requisite specific intent to kill Lieutenant Goings. According to the defendant, the evidence was insufficient to exclude the very real possibility that he intended no physical harm, much less deadly harm. The defendant contends there were a number of alternate explanations for the truck being put in reverse and hitting Lieutenant Goings's vehicle, such as the truck was accidentally put in reverse, or he was trying to disable the vehicle. The defendant points out that even Lieutenant Goings testified he "wasn't that worried about it" when he realized the truck would not go through his windshield.

The evidence established that following a short pursuit on a dirt and gravel road, the defendant stopped in the truck, and Lieutenant Goings stopped twenty to thirty feet behind the defendant. After about a minute of no movement, Lieutenant Goings put his vehicle in park. Lieutenant Goings began to step out of the Charger

when he saw the defendant put the truck in reverse, whereupon he got back inside the Charger. The defendant hit Lieutenant Goings's vehicle and began pushing it backwards. The bed of the truck was higher than Lieutenant Goings's vehicle's bumper. Because it appeared to Lieutenant Goings that the bed was going to go through his windshield, the lieutenant laid across the console of his vehicle. When the truck bumper hit the vehicle bumper, Lieutenant Goings realized the truck bed was not going to reach his windshield, and he sat back up. As the defendant continued to push Lieutenant Goings's vehicle, his vehicle began veering sideways toward a shallow ditch with a low embankment on the left side of the roadway. When the vehicle got pushed against the embankment and could roll no farther, Lieutenant Goings got out of his vehicle and fell to the ground. Feeling his life was in danger, Lieutenant Goings, while lying on his side, drew his weapon and fired five rounds into the driver's side door of the truck. The defendant used the truck he was driving to push Lieutenant Goings's vehicle back twenty-one feet.

Based on the foregoing, a juror could have reasonably concluded that the defendant had the specific intent to kill Lieutenant Goings, particularly in light of the defendant's backing up the truck as he saw Lieutenant Goings trying to step out of his vehicle. A juror could have found the defendant was using the truck as a weapon to attack Lieutenant Goings. Even when Lieutenant Goings got back in his vehicle, the defendant continued to push the vehicle back for over twenty feet until the vehicle could no longer move. See United States v. Hernandez-Conde 301 Fed. Appx. 372, 374 (5th Cir. 2008) (per curiam), cert. denied, 556 U.S. 1140, 129 S.Ct. 1641, 173 L.Ed.2d 1017 (2009) (a vehicle can be a dangerous weapon when used to strike another vehicle); State v. Ross, 18-453, p. 31 (La. App. 3rd Cir. 3/13/19), 269 So. 3d 1052, 1072, writ denied, 19-00581 (La. 1/22/20), 291 So. 3d 1041.

The trier of fact is free to accept or reject, in whole or in part, the testimony

12

of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Gilley, 19-1543, pp. 7-8 (La. App. 1st Cir. 7/17/20), 308 So. 3d 1194, 1200, writ denied, 20-01067 (La. 12/22/20), 307 So. 3d 1026. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So. 2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Nixon, 17-1582, p. 25 (La. App. 1st Cir. 4/13/18), 250 So. 3d 273, 291, writ denied, 18-0770 (La. 11/14/18), 256 So. 3d 290. In the absence of internal contradiction or irreconcilable conflict with the physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, 03-1980, p. 6 (La. 4/1/05), 898 So. 2d 1219, 1226, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).

When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defense, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Moten, 510 So. 2d 55, 61 (La. App. 1st Cir.), writ denied, 514 So. 2d 126 (La. 1987). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the factfinder and thereby overturning a verdict based on an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. State v. Eby, 17-1456, p. 8 (La. App. 1st Cir. 4/6/16), 248 So. 3d 420, 426-27, writ denied, 18-0762 (La. 2/11/19), 263 So. 3d 1153.

After a thorough review of the record, we are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could

have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was guilty of the attempted first degree murder of Lieutenant Goings. See State v. Calloway, 07-2306, pp. 1-2 (La. 1/21/09), 1 So. 3d 417, 418 (per curiam).

This assignment of error is without merit.

## ASSIGNMENTS OF ERROR NOS. 4, 5, and 6

In these related assignments of error, the defendant argues he was denied the effective assistance of counsel, and that the trial court erred in denying the motion for new trial based on the ineffective assistance of counsel claim.

"The Sixth Amendment, applicable to the States by the terms of the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions." Missouri v. Frye, 566 U.S. 134, 138, 132 S.Ct. 1399, 1404, 182 L.Ed.2d 379 (2012). See State v. Thomas, 12-1410, p. 5 (La. 9/4/13), 124 So. 3d 1049, 1053. The United States Supreme Court has long recognized that the right to counsel is the right to the "effective assistance of counsel." Frye, 566 U.S. at 138, 132 S.Ct. at 1404. Claims of ineffective assistance of counsel are generally governed by the standard set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). State v. Curley, 16-1708, p. 7 (La. 6/27/18), 250 So. 3d 236, 241.

To prevail on a claim of ineffective assistance, a defendant must first show that counsel's representation fell below an objective standard of reasonableness. Strickland, 466 U.S. at 687-88, 104 S.Ct. at 2064. An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error has no effect on the judgment. Id. at 691, 104 S.Ct. at 2066. See also Buck v. Davis, __ U.S. __, __, 137 S.Ct. 759, 775-77, 197 L.Ed.2d 1 (2017) (explaining the two prongs of Strickland). To satisfy the second

14

prong of Strickland, a litigant must also demonstrate prejudice. "The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." Strickland, 466 U.S. at 691-92, 104 S.Ct. at 2067. Thus, the "defendant must [also] show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068. The Strickland Court further explained that in making a determination of ineffectiveness of counsel, "[i]n every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." Id. at 696, 104 S.Ct. at 2069. See Harrington v. Richter, 562 U.S. 86, 111-12, 131 S.Ct. 770, 792, 178 L.Ed.2d 624 (2011). Curley, 16-1708 at p. 8, 250 So. 3d at 241.

The defendant's claims herein arise from defense counsel's failure to participate in any phase of the trial herein. While present, defense counsel refused to participate in voir dire, the opening statement, the trial, or closing argument. Regarding trial, defense counsel made no objections and conducted no cross-examination of any witnesses. According to the defendant, defense counsel's failure to participate in the trial resulted in ineffective assistance of counsel. Specifically, the defendant contends he was prejudiced by defense counsel's failure to object to the prosecutor's opening statement and closing argument, wherein he argued that the defendant's absenting himself from his own trial was indicative of guilt. Further, the defendant contends he was prejudiced by defense counsel's

15

failure to object to the improper jury charge regarding attempted first degree murder.

Courts have long recognized that evidence of flight indicates consciousness of guilt and, therefore, is one of the circumstances from which the jury may infer guilt. State v. Gray, 20-0685, p. 13 (La. App. 1st Cir. 6/17/21), 2021 WL 2470515, at *6 (unpublished). Such flight, however, refers to the defendant's leaving the scene of the crime, rather than the defendant leaving his own trial. See for example, State v. Newberry, 16-0147, p. 17 (La. App. 1st Cir. 9/16/16), 2016 WL 4942429, at *9 (unpublished) (noting the jury may consider evidence of flight from the scene of the crime whether or not law enforcement personnel are involved).

Regarding the improper charge, as noted in the third assignment of error, while the specific intent to inflict great bodily harm may support a conviction for murder, only specific intent to kill is sufficient to support a conviction for attempted murder. Hongo, 96-2060 at pp. 2-3, 706 So. 2d at 420. In its jury instructions, the trial court provided the jury the following jury charge: "First degree murder is the killing of a human being when the offender acted with a specific intent to kill or inflict great bodily harm upon a peace officer. Attempted first degree murder [of] a police officer or peace officer is the attempt to commit first degree murder of a peace officer."

In his closing argument, the prosecutor stated: "[The defendant] didn't see if the officer that he struck was injured. Why? Because he intended to injure. He intended to disable. He intended to prevent this officer from arresting him. And the defendant's first instinct is to bolt."

Defense counsel's representation of the defendant, in his refusal to participate at trial, clearly fell below an objective standard of professional reasonableness. With regard to all counts, we find that the defendant demonstrated prejudice, the second prong of Strickland. Defense counsel did not object to

16

improper comments by the prosecution, the improper jury instruction, or the leading of the witnesses. Additionally, defense counsel was silent and made no objections to the prosecutor's comments regarding the defendant's flight and his failure to take the stand. Accordingly, we find that the defendant showed that there was a reasonable probability that but for defense counsel's unprofessional errors, the result of the proceedings would have been different regarding all counts.

Specifically, with regard to the attempted first degree murder conviction, given the unobjected to jury charge on attempted first degree murder, we cannot say that a juror did not conclude that the defendant was guilty of this charge because he had attempted to inflict great bodily harm on Lieutenant Goings. While the defendant did back the truck into Lieutenant Goings's vehicle, the damage to the Charger's bumper was minimal, suggesting a low impact. Given the jury charge and the particular facts of this case, a juror could have reasonably concluded that, while the defendant knew he could hurt Lieutenant Goings by ramming his vehicle, his main objective was to disable the vehicle so that he could escape. When the defendant had stopped on the road, and Lieutenant Goings had stopped behind him, Lieutenant Goings was asked at trial about why he thought the defendant had stopped. The following exchange took place:

> Q. Okay. Now, eventually, did the defendant come -- in the dump truck come to a stop where you circled?
> A. Yes, sir.
> Q. Okay. Did anything prompt him? Like what is your best guess as to why he stopped where he did?
> A. I think he had a plan. When he stopped the dump truck.
> Q. Okay.
> A. He wanted to disable my vehicle. That was his whole intention.
> Q. Okay. All right. With you in it?
> A. Yes.

Based on the foregoing, it is questionable whether the defendant drove the truck in a manner which, beyond a reasonable doubt, manifested a specific intent to kill Lieutenant Goings. See State v. Taylor, 96-320, p. 15 (La. App. 3rd Cir.

11/6/96) 683 So. 2d 1309, 1318, <u>writ denied</u>, 96-2828 (La. 6/20/97), 695 So. 2d 1348. Accordingly, the improper jury charge constitutes reversible error, and the defendant in entitled to a new trial. <u>See</u> <u>Sullivan v. Louisiana</u>, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). We reverse the defendant's convictions and sentences on all counts. We remand this case to the district court for a new trial.

**CONVICTIONS AND SENTENCES REVERSED AND REMANDED FOR A NEW TRIAL.**

STATE OF LOUISIANA

VERSUS

ZARIUS J. BROWN

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0625

WRC

**Chutz, J., concurring.**

I concur with the result reached in the lead opinion. In my view, this case does not present an instance of ineffective assistance of counsel, but of the complete denial of the defendant's constitutional right to counsel. See U.S. Const. Amend. 6; La. Const., art. 1, § 13; *State v. Brooks*, 452 So.2d 149, 155 (La. 1984) (on rehearing); see also *United States v. Cronic*, 466 U.S. 648, 654, 104 S.Ct. 2039, 2044, 80 L.Ed.2d 657 (1984) (the constitutional right to counsel is violated if counsel provides no actual assistance to the defendant's defense). Defense counsel's refusal to participate in the trial or to present any defense whatsoever once the defendant absented himself resulted in the defendant receiving *no* assistance of counsel. *Id.*[1] Further, while the defendant voluntarily absenting himself could be considered a waiver of his right to be present at trial, the record contains no evidence he either expressly or impliedly waived his right to be represented by counsel. *Id.* at 155-57. Therefore, because defense counsel's abject refusal to participate in the trial constructively deprived the defendant of his right to counsel, his convictions and sentences must be reversed and this matter remanded for a new trial. *Id.* at 157.

Even though the trial court chose not to do so, it should be noted the court possessed inherent authority to order defense counsel, under penalty of contempt, to

---

[1] In *Brooks*, the defendant retained new counsel mere days before trial. After his motion for continuance was denied, defense counsel refused to participate in the trial. In concluding Brooks received no assistance of counsel rather than ineffective assistance of counsel, the Supreme Court found the situation was comparable to defense counsel failing to appear for trial. Additionally, the Supreme Court noted the following summation of the situation by Brooks' appellate counsel was appropriate: "All [Brooks] had going for him in the adversary system was a warm body with a license to practice law. Defense counsel did nothing to defend the defendant." The same is true for the defendant in the present case.

perform his duty of representing the defendant. <u>See</u> La. C.Cr.P. arts. 17 & 20; *Id.*, at 157. Further, if defense counsel's failure to participate was a deliberate ploy attempting to obtain a continuance or a new trial, defense counsel could possibly be subject to sanctions or disciplinary action.

STATE OF LOUISIANA

VERSUS

ZARIUS J. BROWN

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2021 KA 0625



**Holdridge, J., dissenting.**

I dissent as to the reversal of the defendant's convictions and sentences based on the determination that the defendant was deprived of the right to effective assistance of counsel where the record does not contain any evidence as to the reason for the defendant's nonappearance and his attorney's nonparticipation in the trial. A claim of ineffectiveness of counsel is generally relegated to post-conviction proceedings. See **State v. Bias**, 2014-1588 (La. App. 1 Cir. 4/24/15), 167 So.3d 1012, 1020-21, writ denied, 2015-1051 (La. 5/13/16), 191 So.3d 1053. Decisions relating to trial strategy can only be sufficiently investigated in an evidentiary hearing in the district court, where the defendant can present evidence beyond what is contained in the instant record, once the requirements of La. C.Cr.P. art. 924, *et seq.* are met. See **State v. Veal**, 2019-0323 (La. App. 1 Cir. 9/27/19), 2019 WL 4731974 at *4 (unpublished), writ denied, 2019-01786 (La. 1/14/20), 291 So.3d 685. In certain circumstances a defendant may knowingly, intelligently, and voluntarily waive the right to assistance of counsel when he intentionally and inexcusably fails to appear at a trial on the merits. Where counsel's ability to fully represent the defendant is impacted or truly limited by the defendant's voluntary absence, then the defendant shall be deemed to have waived any right to object to any error committed by counsel that is directly linked or attributable to the defendant's absence. In cases where a defendant and his counsel have derived a trial strategy that the defendant will absent himself from the trial and counsel will not participate in the trial in order to obtain a reversal based on

ineffective assistance of counsel, the defendant's actions shall not be the basis to reverse a conviction and order a new trial. In those cases, the failure of counsel to participate in the trial shall not be considered ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 668, 681, 104 S.Ct. 2052, 2061, 80 L.Ed.2d 674 (1984). In this case, the circumstances and facts surrounding the defendant's failure to appear at the trial and the lack of participation at the trial by the defendant's counsel should be examined at a contradictory hearing in response to a post-conviction relief application. An immediate reversal of the convictions on appeal would preclude any evidence from being introduced as to whether the Strickland criteria for reversal for ineffective assistance of counsel have been satisfied.